SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney
THOMAS MOORE (ASBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
 9th Floor Federal Building
 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102
 Telephone: (415) 436-7017
 Fax:  (415) 436-6748

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C-07-3086-MEJ |
| Plaintiff, | |
| v. | |
| DAVID C. CLARK, et al., | |
| Defendants. | DATE: January 10, 2008<br>TIME: 10:00 a.m.<br>PLACE: Courtroom B |

MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION
FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**PAGE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD ........................ 1

QUESTIONS PRESENTED ................................................. 2

STATEMENT OF THE CASE ............................................... 2

STATEMENT OF MATERIAL FACTS ......................................... 3

ARGUMENT ............................................................ 4

    I.    BECAUSE THE TAX LIABILITIES ARE RES JUDICATA, THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT FOR THE TAX ..... 4

        A.    Introduction ................................................. 4

        B.    The Taxes Assessments Are Res Judicata ....................... 5

        C.    Certificates of Assessments and Payments Establish the Tax Assessments Against the Clarks for the Liabilities Determined by the Tax Court ................................................... 6

    II.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT AS TO FORECLOSURE ON FEDERAL TAX LIENS ON THE KATHLEAN STREET PROPERTY BECAUSE DAVID C. CLARK OWNS IT ................... 7

        A.    The Clark C. Trust Is Not a Valid Trust ........................ 7

            1.    Facts ................................................ 7

            2.    California Law Governs the Extent of David Clark's Property ... 7

            3.    California Law Requires that a Trust Have an Ascertainable Beneficiary, an Ascertainable Class of Beneficiaries, or a Grant of Power to Chose a Beneficiary ..................... 8

            4.    The Clark C. Trust Documents Do Not Name a Beneficiary or Class of Beneficiaries ................................. 9

            5.    The 1989 Trust Documents Do Not Grant a Power to the Trustee or Some other Person to Select the Beneficiaries Based on a Standard or in the Discretion of the Trustee or Other Person ... 10

            6.    The Clark C. Trust Is Not a Valid Trust .................... 10

        B.    David C. Clark's Conveyance of the Kathlean St. Property Was Invalid 10

        C.    David C. Clark Owns the Kathlean St. Property .................. 11

        D.    Conclusion .................................................. 11

| | | |
|---|---|---|
| III. | THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT AS TO THE FORECLOSURE OF THE LIEN ON THE KATHLEAN ST. PROPERTY BECAUSE THE CLARK C. TRUST IS A NOMINEE OF THE CLARKS ... 12 | |
| | 1. David C. Clark Exerted Considerable Control of the Clark C. Trust and its Assets .................................................. 12 | |
| | 2. The Clark C. Trust Paid Some of David Clark's Personal Expenses ... 13 | |
| | 3. The Clark C. Trust and Its Trustees Were Closely Related to David C. Clark Through His Corporations and Other Trusts ................ 14 | |
| | 4. The Clark C. Trust Lacked Internal Controls and Did Not Have Oversight Over David Clark's Actions ........................ 14 | |
| | 5. David C. Clark Received Inadequate Consideration for His Transfer of the Kathlean St. Property ................................ 15 | |

CONCLUSION ................................................................ 15

## TABLE OF POINTS AND AUTHORITIES

**CASES**                                                    **PAGE**

Anderson v. United States,
    561 F.2d 162 (8th Cir. 1977) .................................................. 7

Caleshu v. United States,
    570 F.2d 711 (8th Cir. 1978) .................................................. 5

California Trade Technical Schools, Inc.,
    923 F.2d 641 (9th Cir. 1991) .................................................. 8

Chang v. Redding Bank of Commerce,
    35 Cal. Rptr. 2d 64 (App. 3rd Dist. 1994) ................................. 8

Commissioner v. Sunnen,
    333 U.S. 591 (1948) ........................................................... 5

First National Bank of Chicago v. United States,
    792 F.2d 954 (9th Cir. 1986) .................................................. 5

Foster v. Commissioner,
    756 F.2d 1430 (9th Cir. 1985) ................................................. 7

Frick v. Phillips,
    518 F. Supp. 1329 (E.D. Wis. 1981) ........................................... 6

Gaylord v. C.I.R.,
    153 F.2d 408 (9th Cir. 1946) .................................................. 8

Gibbs v. Commissioner,
    673 F. Supp. 1088 (N.D. Ala. 1987) ........................................... 6

Holland v. United States,
    209 F.2d 516 (10th Cir.) ...................................................... 6

Jovel v. Jovel,
    49 Cal. App. 4th 575 (6 Dist. 1996) ......................................... 11

Morris v. United States,
    652 F. Supp. 120 (M.D. Fla. 1986) ........................................... 12

O'Connor v. United States,
    669 F. Supp. 317 (D. Nev. 1987) .............................................. 6

Rixford v. Zeigler,
    150 Cal. 435 (1907) .......................................................... 10

Rockwell v. Commissioner,
    512 F.2d 882 (9th Cir.) ...................................................... 7

Russell v. United States,
    592 F.2d 1069 (9th Cir. 1979) ................................................ 5

Shenker v. LeBaube,
    643 F. Supp. 731 (E.D. Mo. 1986) .................................................. 6

United States v. Bess,
    357 U.S. 51 (1958) ........................................................................ 8

United States v. Carter,
    906 F.2d 1375 (9th Cir. 1990) ....................................................... 5

United States v. Cohn,
    682 F. Supp. 209 (S.D.N.Y. 1988) ................................................ 6

United States v. Dawes,
    344 F. Supp. 2d 715 (D.Kan. 2004) ............................ 12, 13, 14, 15

United States v. Drexler, Sr.,
    87-2 USTC ¶ 9493 (1985) ........................................................... 12

United States v. Hemmen,
    51 F.3d 883 (9th Cir. 1995) .......................................................... 8

United States v. Hoffman,
    643 F. Supp. 346 (E.D. Wis. 1986) .............................................. 6

United States v. Janis,
    428 U.S. 433 (1976) ..................................................................... 7

United States v. Lorsen Electric Co.,
    480 F.2d 554 (2d Cir. 1973) ......................................................... 6

United States v. Strebler,
    313 F.2d 402 (8th Cir. 1963) ........................................................ 6

United States v. Williams,
    581 F. Supp. 756 (N.D. Ga. 1982) .............................................. 12

Welch v. Helvering,
    290 U.S. 111 (1933) .................................................................. 6, 7

Wutzke v. Bill Reid Painting Service, Inc.,
    151 Cal. App. 3d 36 (1984) ........................................................ 11

**FEDERAL STATUTES**

United States Code (26 U.S.C.)

§ 6322 ............................................................................................... 8
§ 6502(a)(1) ...................................................................................... 5
§ 6512(a) .......................................................................................... 5
§ 7422(e) .......................................................................................... 5

United States Code (28 U.S.C.)

§ 6321 ............................................................................................... 7

```
 1  SCOTT N. SCHOOLS (SCSBN 9990)
    United States Attorney
 2  THOMAS MOORE (ASBN 4305-O78T)
    Assistant United States Attorney
 3  Chief, Tax Division
      9th Floor Federal Building
 4    450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102
 5    Telephone:  (415) 436-7017
      Fax:        (415) 436-6748
 6
    Attorneys for the United States of America
 7
```

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | No. C-07-3086-MEJ |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| DAVID C. CLARK, et al., | ) | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) | DATE: January 10, 2008<br>TIME: 10:00 a.m.<br>PLACE: Courtroom B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 10, 2008 at 10:00 a.m., before the Honorable Maria-Elena James, United States Magistrate Judge, United States District Court, 15th Floor, Courtroom B, 450 Golden Gate Avenue, San Francisco, California, the plaintiff, United States of America, through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, will and does move for summary judgment to reduce tax assessments to judgment and to foreclose tax liens. This motion is based on the Memorandum of Points and Authorities and the Declaration of Thomas Moore filed herewith, and all the pleadings on file.

For the reasons stated herein, the United States' motion should be granted.

///

///

**QUESTIONS PRESENTED**

1. Whether the plaintiff, the United States of America, is entitled to the entry of summary judgment in its favor for the total amount of the assessments made against defendants David C. Clark and Wendy R. Clark, for unpaid federal income taxes and excise taxes, plus statutory additions and interest.

2. Whether the Clark C. Trust was a invalid trust when David C. Clark conveyed to it the Kathlean St. property, making the conveyance invalid.

3. Whether, if the Clark C. Trust is a valid trust, it is a nominee of David C. Clark.

**STATEMENT OF THE CASE**

The United States filed its complaint to reduce to judgment the unpaid tax assessments of David C. Clark and Wendy R. Clark, to foreclose its tax liens and to set aside an alleged transfer of real property and to determine that the alleged Clark C. Trust is David C. Clark's nominee.

The United States served defendant David C. Clark with the United States' First Request for Admissions to David C. Clark (hereafter "Ex. 1") and served Wendy Clark with United States' First Request for Admissions to Wendy Clark, (hereafter "Ex. 2") via United States mail, on October 11, 2007. *See*, Ex. 1 and 2 attached to Declaration of Thomas Moore (hereafter "Declaration"). The Request for Admissions included questions about the elements necessary to establish that the Clark C. Trust is a nominee David C. Clark. Defendants replied on October 30, 2007.

In requests for admissions concerning the extent to which the taxpayers exercised dominion over the property through the trust, the United States asked David C. Clark and Wendy Clark, the parties named as grantors of the Clark C. Trust, to admit that the trust instrument of the Clark C. Trust was comprised solely of the Declaration of Trust from January 5 to January 9, 1989. David Clark admitted this request; Wendy Clark lacked knowledge to admit or deny. Ex. 1, No. 5; Ex. 2, No. 5. The United States also asked David C. Clark and Wendy Clark to admit that between January 9, 1989 until September 26, 1996 the trust instrument of the Clark C. Trust was comprised solely of the Declaration of Trust and the Amended Declaration from David Clark admitted this request, and Wendy Clark lacked knowledge to admit or deny. Ex.1, No. 6;

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)        2

1  Ex. 2, No. 6. The United States also asked David C. Clark and Wendy C. Clark to admit to
2  directing the operation of the trust with statements or writings beyond the trust documents to
3  Steven Shallenberger or Russell Jacobsen, either before or after they became trustees of the Clark
4  C. Trust. Both David C. Clark and Wendy Clark denied making any such statements or writings.
5  Ex. 1, No. 2; Ex. 2, No. 2. The United States asked David C. Clark and Wendy Clark to admit
6  that either of them intended that the trust operate differently than under the terms of the trust
7  documents. They each denied having such intent. Ex. 1, No. 3; Ex. 2, No. 3. Finally, the
8  United States asked David C. Clark and Wendy Clark to admit that the Clark C. Trust existed
9  before the execution of the January 5, 1989 Declaration of Trust. Both denied that the trust
10 existed before January 5, 1989. Ex.1, No. 4; Ex. 2, No. 4.

11    Accordingly, defendants David and Wendy Clark have admitted that only the trust
12 documents, and no other writings, govern the Clark C. Trust, and that the grantors did not direct
13 the operation of the trust beyond the trust documents. Further, the admissions show that the trust
14 document fully reflects the grantors' intent and that the trust came into existence at the execution
15 of the trust documents. These admissions show that the three trust documents accurately reflect
16 the grantors' intent and comprise the entire trust instrument of the Clark C. Trust.

17    The undisputed facts with respect to David C. Clark's alleged interest in the Kathlean St.
18 property arise from his admissions and from facts as set forth in the United States' First Request
19 for Admissions to David C. Clark, the United States' First Request for Admissions to Wendy R.
20 Clark, the Declarations of Thomas Moore and the exhibits attached thereto.

21                    **STATEMENT OF MATERIAL FACTS**

22    David C. Clark and Wendy Clark are the taxpayers in this case. On June 18, 2001, the
23 United States Tax Court entered a Stipulated Decision against taxpayers David C. Clark and
24 Wendy Clark to the 1996 tax year. See Ex. 6. On August 20, 2001 an assessment was made by a
25 delegate of the Secretary of the Treasury against defendants David C. Clark and Wendy Clark for
26 unpaid federal income taxes plus related penalties and interest (plus accrued but unassessed
27 statutory additions to tax) for the following amount and period:
28

**Mem. In Suppt. Of U.S.' Mot. For**
**S/J (NO. C-07-3086-MEJ)**                3

| TAX YEAR/ TYPE OF TAX | DATE OF ASSESSMENT | TAX ASSESSED | BALANCE OF TAX, INT., FEES & PEN TO 06/15/07 | NOTICE OF LIEN FILED IN ALAMEDA COUNTY |
|---|---|---|---|---|
| 1996/Income | 8/20/01 | $ 334,326.10 | $ 545,030.53 | 10/1/01 |

The assessment is reflected on the Certificate of Assessments and Payments. Ex. 3. On October 1, 2001, the IRS filed at the Alameda County Recorder a Notice of Federal Tax Lien on the Kathlean St. property for an unpaid balance of $409,818.16. Ex. 4A. On November 13, 2002, the IRS sent to Defendants David and Wendy Clark a Notice of Intent to Levy. Ex. 5.

Additionally, the claim of the United States is base on the decision of the United States Tax Court against Defendant David C. Clark for excise taxes for the 1998-2001 tax periods. Exhibit 7. A delegate of the Secretary of the Treasury made assessments against defendant David C. Clark for unpaid federal excise taxes, plus related penalties and interest (plus accrued but unassessed statutory additions to tax)[1/] for the following amounts and periods:

| TAX YEAR/ TYPE OF TAX | DATE OF ASSESSMENT | TAX ASSESSED | BALANCE OF TAX, INT., FEES & PEN TO 06/15/07 | NOTICE OF LIEN FILED IN ALAMEDA COUNTY |
|---|---|---|---|---|
| 1998/Excise | 12/15/03 | $ 4,797.91 | $ 5,967.24 | 4/30/04 |
| 1999/Excise | 12/15/03 | $ 9,299.03 | $ 11,565.35 | 4/30/04 |
| 2000/Excise | 12/15/03 | $ 14,092.68 | $ 17,527.28 | 4/30/04 |
| 2001/Excise | 12/15/03 | $ 16,708.13 | $ 20,780.18 | 4/30/04 |

**ARGUMENT**

I. **BECAUSE THE TAX LIABILITIES ARE RES JUDICATA, THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT FOR THE TAX ASSESSMENTS AGAINST THE CLARK DEFENDANTS**

A. **Introduction**

This is an action to reduce to judgment the assessments made against David C. Clark and Wendy Clark for unpaid federal income taxes, statutory additions and interest for 1996, and to

---

[1/] A lien for such taxes was filed in Alameda County on April 30, 2004. See Ex. 4B.

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)                 4

reduce to judgment the excise tax assessments against David C. Clark for 1998-2001. Sections 7401 and 7402 of the Internal Revenue Code of 1986 explicitly authorize such an action. *Caleshu v. United States*, 570 F.2d 711, 713 (8th Cir. 1978).

A court proceeding to obtain a judgment for unpaid tax assessments must be instituted within ten years after assessment, or prior to the expiration of any period for collection agreed upon in writing by the taxpayer and the Internal Revenue Service. 26 U.S.C. § 6502(a)(1). As reflected on the Certificate of Assessments and Payments attached to the Declaration as Exhibit 3, the income tax assessment in this case occurred in 2001, within ten years from the date this suit was brought against David C. Clark and Wendy Clark. The excise tax assessments for David C. Clark for 1998-2001 occurred in 2003. Ex. 8. Accordingly, this action was timely filed on June 13, 2007 for all taxable years in suit.

**B.     The Taxes Assessments Are Res Judicata**

The tax assessment made against the Clarks for taxable year 1996 and against David Clark of the 1998-2001 tax periods were the subject of petitions filed in the United States Tax Court. The Tax Court entered a Decision that the Clarks were liable for 1996 income tax deficiencies and statutory additions. The Tax Court also entered a Decision that David Clark was liable of the excise taxes at issue here. Subsequently, the IRS made tax assessments for those periods.

Accordingly, this Court lacks the requisite subject matter jurisdiction to redetermine the tax liability of the defendants as established in the prior Tax Court action. *First National Bank of Chicago v. United States*, 792 F.2d 954, 955 (9th Cir. 1986); 26 U.S.C. §§ 6512(a), 7422(e). More importantly, however, the decisions of the United States Tax Court entered against the defendants are res judicata and conclusive as to all matters decided therein. *Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948); *United States v. Carter*, 906 F.2d 1375, 1378 (9th Cir. 1990); *Russell v. United States*, 592 F.2d 1069, 1072 (9th Cir. 1979). As the Court in *Sunnen* stated:

> Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year.

*Sunnen*, 333 U.S. at 598.

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)                    5

1    District courts have uniformly observed and upheld the res judicata effect of
2 determinations of tax liability by the Tax Court. See, e.g., *United States v. Cohn*, 682 F. Supp.
3 209, 222-223 (S.D.N.Y. 1988); *Gibbs v. Commissioner*, 673 F. Supp. 1088, 1092 (N.D. Ala.
4 1987); *O'Connor v. United States*, 669 F. Supp. 317, 321 (D. Nev. 1987); *United States v.
5 Hoffman*, 643 F. Supp. 346, 348 (E.D. Wis. 1986); *Shenker v. LeBaube*, 643 F. Supp. 731, 732
6 (E.D. Mo. 1986). *Cohn* and *Hoffman* are particularly relevant because both of those cases
7 involved, like the present case, an action to reduce tax assessments to judgment.
8    The liability of the defendants for the unpaid assessment for federal income taxes and
9 statutory additions for the taxable years 1996 as previously determined by the Tax Court is not
10 subject to challenge by the Clarks in this action, nor is the liability for Defendant David C.
11 Clark's unpaid excise taxes. If Defendants dispute the outcome of the Tax Court litigation, this
12 is not the proper forum for raising such a protest. As there can be no question as to the their
13 liability for the 1996 income tax assessment, nor the 1998-2001 excise tax assessments, the
14 United States is entitled to summary judgment against the defendants for the amounts of those
15 assessments, plus accrued but unassessed statutory additions, and interest with respect to those
16 assessments as provided by law.

17    **C.    Certificates of Assessments and Payments Establish the Tax Assessments
         Against the Clarks for the Liabilities Determined by the Tax Court**
18

19    After the Tax Court entered decisions on the tax deficiencies at issue, the IRS made an
20 assessments against the Clarks for the unpaid taxes, statutory additions, and interest. The
21 Certificate of Assessment and Payment filed herein reflects these assessments. Exhibits 3 and 8..
22 A certificate of assessments and payments is admissible into evidence pursuant to Rules 803(8)
23 and 902(4) of the Federal Rules of Evidence and is the proper means of establishing the facts of
24 the administrative assessment, notice, and demand for payment. *United States v. Lorsen Electric
25 Co.*, 480 F.2d 554, 555-556 (2d Cir. 1973); *United States v. Strebler*, 313 F.2d 402, 403-404
26 (8th Cir. 1963); *Holland v. United States*, 209 F.2d 516, 520-521 (10th Cir.), aff'd, 348 U.S. 121
27 (1954); *Frick v. Phillips*, 518 F. Supp. 1329, 1331 (E.D. Wis. 1981). *See also, Welch v.
28 Helvering*, 290 U.S. 111, 115 (1933). An assessment for unpaid federal taxes, when properly

1  certified, is presumptively correct evidence of a taxpayer's liability and satisfies the Government's
2  burden of proof so that the United States may rest its case. *United States v. Janis*, 428 U.S. 433,
3  440-441 (1976); *Anderson v. United States*, 561 F.2d 162, 165 (8th Cir. 1977).  See also *Welch v.*
4  *Helvering*, 290 U.S. 111 (1933); *Foster v. Commissioner*, 756 F.2d 1430, 1439 (9th Cir. 1985);
5  *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir.), *cert. denied*, 423 U.S. 1015 (1975).
6  The defendant taxpayer must then prove that the assessment is incorrect.
7      In the present case, the Certificate of Assessments and Payments for the Clark defendants
8  establish that the assessments were made, that notice and demand was made for the tax liabilities,
9  and that the Clarks have failed to pay those liabilities. Exhibits 3 and 8. The United States thus
10 has established its entitlement to summary judgment.

**II.  THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT AS TO FORECLOSURE ON FEDERAL TAX LIENS ON THE KATHLEAN STREET PROPERTY BECAUSE DAVID C. CLARK OWNS IT**

    **A.  <u>The Clark C. Trust Is Not a Valid Trust</u>**

        **1.  Facts**

On January 5, 1989, defendant David C. Clark executed a document that purported to create the Clark C. Trust. Ex. 9. On January 9, 1989, David C. Clark and Wendy R. Clark executed a document that purported to amend the declaration of trust of the Clark C. Trust. Ex. 10. On September 26, 1996, David C. Clark executed a document that purported to amend the declaration of trust of the Clark C. Trust. Ex. 11. (Collectively "Clark C. Trust Documents"). These documents are the sole documents that make up the trust, and fully reflect the intent of the grantors. *See* Ex. 1 and Ex. 2. On August 2, 1989, the Alameda County Recorder recorded a quitclaim deed on the Kathlean St. property by Wendy R. Clark in favor of David C. Clark. Ex. 12. On October 4, 1989, the Alameda County Recorder recorded a quitclaim deed by David C. Clark on the Kathlean St. property in favor of the Clark C. Trust. Ex. 13.

        **2.  California Law Governs the Extent of David Clark's Property**

When a taxpayer liable for taxes refuses to pay, the amount the taxpayer owes "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 28 U.S.C. § 6321. Generally, such a lien arises "at the time

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)       7

the assessment is made. 26 U.S.C. § 6322. The Supreme Court ruled that the statute that authorized IRS liens on taxpayer property "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess*, 357 U.S. 51, 54 (1958). The Ninth Circuit has applied this rule to Section 6321. *United States v. Hemmen*, 51 F.3d 883, 887 (9th Cir. 1995).

"Whether a trust has been established is generally a question to be resolved under the law of the state that is the situs of the trust fund." *In re California Trade Technical Schools, Inc.*, 923 F.2d 641, 646 (9th Cir. 1991). The Ninth Circuit applied California law to a trust that was executed in and administered from California, when the trust res as well as all of the parties to the trust lived in California and the trust instrument did not disclose an intention of the grantors that the situs of the trust shall be in any other state. *Gaylord v. C.I.R.*, 153 F.2d 408, 415 (9th Cir. 1946). The Clark C. Trust Documents declare that the trust has its principal place of business in California and do not express an intent to organize the trust under a different state's law. The Kathlean St. property is in California. Therefore, California law governs the identity of "all property and rights to property" belonging to defendant David C. Clark.

### 3. California Law Requires that a Trust Have an Ascertainable Beneficiary, an Ascertainable Class of Beneficiaries, or a Grant of Power to Chose a Beneficiary

In California, a trust is created by "manifestation of intention of settlor to create trust, trust property, lawful trust purpose, and identifiable beneficiary." *Chang v. Redding Bank of Commerce*, 35 Cal. Rptr. 2d 64 (App. 3rd Dist. 1994). "A trust, other than a charitable trust, is created *only* if there is a beneficiary." Cal. Prob. Code § 15205(a) (emphasis added). A trust instrument satisfies this section of the probate code when it provides for "a beneficiary or class of beneficiaries that is ascertainable with reasonable certainty or that is sufficiently described so it can be determined that some person meets the description or is within the class." Cal. Prob. Code § 15205(b)(1). Alternatively, the trust instrument can satisfy Section 15205 by providing "a grant of a power to the trustee or some other person to select the beneficiaries based on a standard or in the discretion of the trustee or other person." Cal. Prob. Code § 15205(b)(2). Since Defendants do not claim that the Clark C. Trust is a charitable trust, the trust is valid only

1  if it satisfies one of the disjunctive prongs of Section 15205(b).

### 4. The Clark C. Trust Documents Do Not Name a Beneficiary or Class of Beneficiaries

The January 5, 1989 Declaration of Trust proclaims the Clark C. Trust is "hereby created." Ex. 9, p. 3. On January 9, 1989, the grantors and trustees executed an Amendment to the Declaration of Trust which adds to the language of the declaration. Ex. 10. An Amended Declaration of Trust that the grantor and trustees signed on September 26, 1996, further adds to the language of the trust. Ex. 11. However, David C. Clark conveyed the Kathlean Street property to the Clark C. Trust on October 4, 1989. Ex. 6. For the purpose of determining the status of the Clark C. Trust at the time of conveyance, only the Declaration of Trust and Amended Declaration of Trust ("1989 Trust documents") constitute the trust instrument, with no other writing or oral trust affecting the trust instrument, as admitted by Defendant David C. Clark. Ex. 1, No. 6.

The 1989 Trust documents are silent as to the identity of the beneficiaries. Despite directing trustees to distribute assets to beneficiaries, creating a system of certificates of beneficial interests for distribution, and restricting the alienation of beneficial interests through a spendthrift clause, the 1989 Trust documents do not name the beneficiaries who will receive the beneficial interests. The clause creating the beneficial interests decrees that "the lawful possessor [of a certificate of beneficial interest] shall be construed to be the true and lawful owner thereof." Ex. 9 at 5. However, this clause does not identify the "lawful possessor" of any of the certificates, nor does it empower the grantor, trustee or any other person to distribute such certificates.[2/]

Similar to the absence of identified beneficiaries is the complete absence, in the 1989 Trust documents, of mention of a class of beneficiaries of the trust. Nowhere in either of the documents is a description of those who will benefit from the trust, receive distribution of trust

---

[2/]    A writing by the Clark C. Trust just over a month after the Declaration of Trust of the Clark C. Trust, created the DCC Leasing Trust, which included David C. Clark as a trustee. The document that established this trust named the lawful owners of the 100 units of beneficial interest.

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)                9

income or property, or enforce the terms of the trust.

Since the documents do not name an ascertainable beneficiary or class of beneficiaries in accordance with Section 15205, the trust instrument of the Clark C. Trust does not satisfy Section 15205(b)(1).

### 5. The 1989 Trust Documents Do Not Grant a Power to the Trustee or Some other Person to Select the Beneficiaries Based on a Standard or in the Discretion of the Trustee or Other Person

The 1989 Trust documents lack an specific identification of trustees and also lack an explicit grant of power to the trustees to choose beneficiaries. The trust documents contains a list of the powers of trustees, as well as general grants of power; none of these sections includes a grant of power to trustees to name beneficiaries. Since the trust instrument does not grant to the trustees or to anyone else the power to name beneficiaries, the documents do not satisfy Section 15205(b)(2).

### 6. The Clark C. Trust Is Not a Valid Trust

The putative trust fails to satisfy the California statute that requires a trust to identify a beneficiary. Because the statute declares that "[a] trust, other than a charitable trust, is created *only* if there is a beneficiary," the Clark C. Trust documents do not create a valid trust. Cal. Prob. Code § 15205(a) (emphasis added).

### B. David C. Clark's Conveyance of the Kathlean St. Property Was Invalid

The California Supreme Court made clear a century ago that "[t]he general rule is, beyond doubt, that a deed of conveyance is void unless the grantee named is capable of taking and holding the property named in the deed; and the general rule also is that to make a deed effective the grantee must be a person, either natural or artificial, capable of taking and holding the property." *Rixford v. Zeigler*, 150 Cal. 435, 437-438 (1907). Because the lack of beneficiary in the putative creation of the Clark C. Trust fails to satisfy the requirement of Section 15205, the grantors did not create a trust capable of taking the property. Therefore, the October 4, 1989 quitclaim deed in which David C. Clark claimed to "remise . . . release and forever quitclaim" the Kathlean St. property is a void deed of conveyance, and was void from the moment of its

1  creation.[3/] Ex. 13.

2  **C.     David C. Clark Owns the Kathlean St. Property**

3  "When a deed is void *ab initio*, it 'constitutes a nullity; as such it cannot provide the basis
4  for a superior title as against the original grantor." *Jovel v. Jovel*, 49 Cal. App. 4th 575, 585 (6
5  Dist. 1996) quoting *Wutzke v. Bill Reid Painting Service, Inc.*, 151 Cal. App. 3d 36, 43 (1984).
6  On September 23, 1983, Judith Brown executed a grant deed on the property to the Clarks. On
7  July 28, 1989, Wendy Clark quitclaimed her interest to David C. Clark. Therefore, at the
8  execution of the October 4, 1989 quitclaim deed to the Clark C. Trust, David C. Clark held title
9  to the property. Since the deed was void, and David C. Clark has made no subsequent
10 conveyances of interest, he remains the owner of the Kathlean St. property.

11 **D.     Conclusion**

12 When the Clarks executed the 1989 Trust documents, they failed to create a valid trust for
13 want of a beneficiary. After Wendy Clark executed a quitclaim to David C. Clark, he held the
14 sole interest in the Kathlean St. property. His void deed to the nonexistent Clark C. Trust did
15 nothing to change this fact. Therefore, the Kathlean St. property was, according to California
16 law, among the property belonging to David C. Clark at the times the tax assessments were
17 made. Because David C. Clark owned the property at the time of assessment, a lien attaches to
18 the property.

19 There is no genuine issue as to any material fact that establishes the failure of the Clark
20 C. Trust and David C. Clark's ownership of the Kathlean St. property. Since the liens attach to
21 the property and the taxpayers have not satisfied the assessments, the Court should grant
22 summary judgment in favor of the United States as to the foreclosure of the liens on the Kathlean
23 St. property.

24 ///

25 ///

---

[3/]     Because the quitclaim deed from David C. Clark to the Clark C. Trust is void, subsequent conveyances of interest in the Kathlean St. property through Deeds of Trust from the Clark C. Trust to other entities are also void.

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)                           11

III. **THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT AS TO THE FORECLOSURE OF THE LIEN ON THE KATHLEAN ST. PROPERTY BECAUSE THE CLARK C. TRUST IS A NOMINEE OF THE CLARKS**

If the Court agrees that the Clark C. Trust is an invalid trust then it will not need to reach the issue of whether the Clark C. Trust is a nominee for David C. Clark. If the Court finds that the Clark C. Trust is a valid trust that holds title to the Kathlean St. property, it should nonetheless grant summary judgment to the United States on a nominee lien theory.

Property held for a taxpayer as his nominee may be sold to pay the taxpayer's tax liabilities. *See, e.g., United States v. Williams*, 581 F.Supp. 756 (N.D. Ga. 1982); *United States v. Drexler, Sr.*, 87-2 U.S.T.C. ¶ 9493 (1985); *Morris v. United States*, 652 F.Supp. 120 (M.D. Fla. 1986).

> To establish that a trust is the nominee of the taxpayer and that the taxpayer is the actual owner of the property, the courts examine the following factors: 1) the taxpayer's control over the nominee and its assets; 2) the use of trust funds to pay taxpayer's personal expenses; 3) the relationship between the taxpayer and the nominee; 4) the lack of internal controls and the lack of nominee oversight of taxpayer's actions; and 5) the lack of consideration for transfers of property."

*U.S. v. Dawes*, 344 F.Supp.2d 715, 721 (D.Kan. 2004)

An analysis of the five factors compels the conclusion that the Clark C. Trust holds the Kathlean St. property as a nominee of David C. Clark.

1. **David C. Clark Exerted Considerable Control of the Clark C. Trust and its Assets**

David C. Clark and others created a series of entities which gave rise to the income tax assessment that is the subject of this lawsuit. The Tax Court approved the validity of the tax deficiencies, so it is unnecessary to describe the details of the strategy. However, even an outline of the scheme makes clear the close relationship between David C. Clark, his closely-held corporations, the Clark C. Trust, other trusts, and the trustees of these trusts.

David C. Clark owns two corporations, American Synergy and Synergy Environmental.

David G. Clark, father of David C. Clark, is a trustee of the Zion Foundation. Ex. 14. Russell G. Jacobsen, an employee of David C. Clark's two closely-held corporations, is also one of the original trustees of the Clark C. Trust, and serves as a trustee of the American Synergy Financial Trust, the Synergy Environmental Company Trust, and the Zion foundation. *Id.*

1    Steven Shallenberger, the other original Clark C. Trust trustee, is also a trustee of the
2    American Synergy Financial Trust, the Synergy Environmental Company Trust, and the Zion
3    Foundation. Shallenberger operates Eagle Systems International, which received a total of
4    $169,668 from the American Synergy Financial Trust and the Synergy Environmental Company
5    Trust in 2000. Eagle routes customers to Synergy Environmental. Ex. 15.
6    The two corporations, American Synergy Corporations and Synergy Environmental Inc.,
7    earn profits but do not pay dividends. Ex. A1, p. 3. Each corporation is controlled by a trust; the
8    trusts distribute most of their profits to the Clark C. Family Trust. *Id.* The Clark C. Trust
9    distributes most of its income to the Zion Foundation. *Id.* The Zion Foundation donates some
10   money to the Church of Latter Day Saints, but invests the bulk of its income. *Id.* Zion invests in
11   Preferred Capital Investments Inc., which makes loans to the Clark C. Trust and other trusts
12   controlled by David C. Clark. Ex. 16.
13   This scheme is possible because of the close relationships between Defendant David C.
14   Clark, his employee and long-time associate Russell Jacobsen, who acts as trustee for several of
15   the trusts, his father, David G. Clark who is active in the Zion Foundation, and Steven
16   Shallenberger, who both relies on Defendant for significant income and serves as trustee for
17   several of the trusts. David C. Clark can control the flow of income throughout the web of
18   organizations by rewarding Jacobsen and Shallenberger or by threatening them with loss of their
19   livelihoods. David G. Clark is also closely related, through both family ties and his participation
20   as a trustee. Most relevant for the motion is that the trustees of the Clark C. Trust depended
21   financially on David C. Clark, giving him significant control over property belonging to that
22   trust, including the Kathlean Street property.
23   **2.   The Clark C. Trust Paid Some of David Clark's Personal Expenses**
24   The Clark C. Trust paid property tax on the Kathlean St. property while Defendant lived
25   there between 1996 and 2001 and the middle of 2000. Ex. 1, No. 8 & 14. The Clark C. Trust
26   also paid insurance premiums on the house. *Id.* at No. 13. In addition, though Defendant
27   executed a lease with the Clark C. Trust to live in the Kathlean St. property, no evidence shows
28   that he ever paid rent to the trust. Furthermore, the trust, over which David C. Clark had

significant control, would be unlikely to enforce the lease against him. This arrangement allowed Defendant and his family to live rent-free from 1983 to 2000 and since 2004. Such an arrangement constitutes an extraction of a significant benefit from the trust by the defendant.

### 3. The Clark C. Trust and Its Trustees Were Closely Related to David C. Clark Through His Corporations and Other Trusts

The same facts that allow David C. Clark to exert control over the Clark C. Trust and its corpus also underlie the close relationship between David and Wendy Clark, the corporations, trusts and trustees. As explained above, a long-time employee of David C. Clark's corporations managed the trusts through which Defendant funneled his income. Another colleague, who depended on David C. Clark's corporations, acted as a trustee. His father sat as a trustee of the trust that managed the investments and donations. The Clark C. Trust is closely related to David C. Clark through family and business connections.

### 4. The Clark C. Trust Lacked Internal Controls and Did Not Have Oversight Over David Clark's Actions

When the Clarks did not live at the Kathlean Street property, the Clark C. Trust allowed people to live in the house rent-free "in return for caring for the property." Ex. 14, ¶ 7.

In a 2002 interview under oath, Russell Jacobsen was uncertain about the identities of the Clark C. Trust's creators and trustees. *Id.* at ¶ 6. He said that the beneficiaries were David and Wendy Clark's children, but his lawyer later said that the Zion Foundation was the beneficiary. *Id.*, n.3. The Clark C. Trust executed a deed of trust secured by the Kathlean St. property. *Id.* This deed did not pass through escrow. *Id.* Despite signing a deed of trust on the Kathlean St. property as "Executive Trustee," Jacobsen denied being the Executive Trustee. *Id.* at ¶ 6. Russell Jacobsen regularly communicates with David C. Clark, and reports to Steven Shallenberger in is position as comptroller of Synergy Environmental Corp. and American Synergy Corp. *Id.* at ¶ 4, ¶ 5. The Clark C. Trust has bank accounts on which David C. Clark "might have signature authority." *Id.* at ¶ 6. These facts show a trust that lacks oversight or proper knowledge by its ostensible executive trustee.

///

In addition, the Clarks' children, the supposed beneficiaries of the Clark C. Trust, had little oversight or chance to enforce the terms of the trust. If they had such a chance, they would have objected to the trustees' decisions to donate the trust's income to the Church of Latter Day Saints instead of retaining and investing that income.

### 5. David C. Clark Received Inadequate Consideration for His Transfer of the Kathlean St. Property

On September 23, 1983, Judith Brown executed a grant deed on the Kathlean St. property to the Clarks. Ex. 18. On July 28, 1989, Wendy Clark quitclaimed her interest in the house to David C. Clark. Ex. 13. He then executed a quitclaim deed on October 4, 1989 to the Clark C. Trust for $10 and "other considerations of value." Ex. 14. However, at the first meeting of the Clark C. Trust, the house is described as having an "appraisal value of $225,000." Exhibit 18. The attached schedule does mention that existing mortgage loans reduce the appraisal value. *Id.* The total encumbrance totals $210,875. *Id.* Reducing the appraisal value by this amount leaves positive equity of $14,125. While the "other considerations of value" are unknown, the quitclaim deed is for a "gift," with "consideration less than $100." *Id.* Regardless of the nature of the "other considerations of value," $100 is inadequate consideration for the transfer of $14,125 in equity in the property.

### CONCLUSION

Based on the foregoing reasons, the plaintiff, the United States of America, respectfully requests that this Court enter summary judgment in favor of the United States and against David C. Clark and Wendy Clark.

SCOTT N. SCHOOLS
United States Attorney

THOMAS MOORE
Assistant United States Attorney
Chief, Tax Division

Mem. In Suppt. Of U.S.' Mot. For
S/J (NO. C-07-3086-MEJ)                    15