# EXHIBIT 9

1

# DECLARATION OF TRUST

# THE CLARK C. TRUST

41121 Kathlean Street
Fremont, California 94538

January 5, 1989

# DECLARATION OF TRUST

# THE CLARK C. TRUST

41121 Kathlean Street
Fremont, California 94538

January 5, 1989

**THE GRANTORS,** DAVID C. CLARK and WENDY R. CLARK, hereby constitute and appoint the above-designated TRUSTEES, STEVEN R. SHALLENBERGER and RUSSELL JACOBSEN, to be, in fact, TRUSTEES OF THE TRUST, THE CLARK C. TRUST hereby created and established. The GRANTOR for and in consideration of the objects and purposes herein set forth, the cash sum of Ten Dollars in hand paid and other considerations of value, the receipt of which is hereby acknowledged, does hereby agree to sell, assign, convey and deliver unto said TRUSTEES, IN TRUST, who are to hold legal title in joint tenancy and not as tenants-in-common, to collectively act by virtue of this covenant as a BOARD OF TRUSTEES under the name herein designated, certain properties, business projects, operations under way or contemplated, dealing in equities, formulae, entities, patents, copyrights, business good-will, or other business desired to be engaged in by said TRUSTEES.

The TRUST name and other things of value to constitute A TRUST (ESTATE), including rights in reversion or remainder wherever situate, and other things of value and having its principal place of business at:

THE CLARK C. TRUST
41121 Kathlean Street
Fremont, Alameda County, California 94538

The above-named TRUSTEES, for themselves and their successors IN TRUST, do hereby agree to accept properties real and personal to be conveyed and acknowledge acceptance and delivery of all of the property specified, together with all the terms of THE TRUST herein set forth, agreeing to conserve and improve THE TRUST (ESTATE), to invest and reinvest the funds of SAID TRUST in such manner as to increase the financial rating of the TRUST during the period of outstanding liabilities of the various properties and enterprises; in commerce for gain, exercising their best judgment and discretion in accordance with the TRUST MINUTES, making distributions of portions of the proceeds and income as in their discretion and according to the MINUTES should be made, making periodic reports of business transactions and upon final liquidation distributing the assets to the BENEFICIARIES as their interests may appear; and in all other respects administering SAID TRUST (ESTATE) in good faith in conformity hereto.

**TRUSTEES** shall be not less than two, but may be increased in number for practical reasons beneficial to the TRUST. THE TRUSTEES herein mentioned by name or their SUCCESSORS elected to fill vacancies, shall hold office, have and exercise collectively the exclusive management and control of the TRUST property and business affairs;

PROVIDED, HOWEVER, that a TRUSTEE may resign or be removed from office by a RESOLUTION of unanimous concurrence of the remaining TRUSTEES, when in their opinion said TRUSTEE shall have been guilty of fraud, malfeasance in office, gross neglect of duty, or for cause by the mandate of a court of competent jurisdiction; and

PROVIDED FURTHER, that in the event of death, removal from office or resignation, THE TRUSTEES shall appoint or elect a SUCCESSOR TRUSTEE by the unanimous concurrence of the remaining TRUSTEES. Should the entire BOARD OF TRUSTEES become vacant, a court of equity may appoint one TRUSTEE, who in turn shall appoint the additional TRUSTEES. Should objection be filed to appointment of additional TRUSTEES, the same shall be spread upon the MINUTES. Any such objection shall deprive the candidate from accepting the trusteeship.

The signing and acknowledging of this Agreement by the herein above appointed TRUSTEES or the signing and acknowledging of appropriate MINUTES by TRUSTEES subsequently elected or appointed, shall constitute their acceptance of THIS TRUST; and their acknowledgment of ITS copyrights and registration and the TRUST property, assets and emoluments thereof shall immediately vest in the new TRUSTEE or TRUSTEES without any further act or conveyance.

**TRUSTEES' MEETINGS:** By a regular act of the TRUSTEES they may provide for meetings of the BOARD OF TRUSTEES at stated intervals without notice, and special meetings may be called at any time by two or more TRUSTEES upon three (3) days written notice, which may be waived. At any regular or special meeting a

Trust Indenture - THE CLARK C. TRUST - Page 3 of 7

MAJORITY OF THE TRUSTEES shall constitute a quorum for conducting busines, PROVIDED, affirmative action may only be had upon a MAJORITY VOTE of the TRUSTEES whether present or absent; except that at special meetings called for a special purpose the MAJORITY present may affirmatively act in emergency matters.

**POWERS OF TRUSTEES:** Trustees may do anything any individual may legally do in any state or county, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein especially noted, at their discretion, for the benefit of THIS TRUST, such as viz: buy, sell, or lease real estate for the surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks or copyrights, buy, sell, or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses, or other trading establishments or places of business of any kind; construct, buy, sell, lease, or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging TRUST property for the payment thereof; hypothecate assets, property or both, of the TRUST in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous.

A MINUTE OF RESOLUTIONS OF THE BOARD OF TRUSTEES authorizing what they determine to do or have done shall be evidence that such an act is within their power. Anyone lending or paying money to the TRUSTEES shall not be obliged to see the application thereof; all funds paid into the treasury are and become part of the CORPUS of THIS TRUST.

**ADMINISTRATION:** The TRUSTEES shall regard this instrument as their sufficient guide, supplemented from time to time by their RESOLUTIONS (said RESOLUTIONS to be ALWAYS ratified by a MAJORITY of the TRUSTEES then in office and participating in the issuing meeting) covering contingencies as they arise and are recorded in the MINUTES of their meetings, which are the By-laws, rules and regulations of THIS TRUST.

**OFFICERS AND MANAGEMENT:** The TRUSTEES may in their discretion elect among their number an EXECU-TIVE TRUSTEE, CO-EXECUTIVE TRUSTEE, SECRETARY TRUSTEE, and TREASURER TRUSTEE, AGENT TRUSTEES, GUARDIAN TRUSTEES, SUCCESSOR TRUSTEES, or any other offices they may deem expedient for proper functioning. TRUSTEES may hold two or more offices simultaneously, their duties being such as are usual or are prescribed. They may employ AGENTS, EXECUTIVES, or other EMPLOYEES, or designated third persons to hold funds for specific purposes.

**EXPENDITURES:** The TRUSTEES shall fix and pay compensation of all officers, employees, or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by a MAJORITY of the BOARD OF TRUSTEES.

**CONSTRUCTION:** The TRUSTEES, OFFICERS, AGENTS, OR EMPLOYEES possess only such authority as is awarded them herein. Authority is understood and meant to be similar to that awarded an EXECUTOR of an ESTATE wherein the TESTATOR directs (illustration): "That my Executor is directed to handle the estate in the manner he thinks to be to the best interest limited by the terms hereof, without the necessity of resort to the court for permission or approval of any transaction, intending herein to leave open for the court the question of conscientious dealings of my Executor only."

**TRUSTEES' DECLARATION OF PURPOSE:** The TRUSTEES shall be required to accept rights, title, and interest in and to real and personal properties, whether tangible or intangible, conveyed by the CREATORS HEREOF AND GRANTORS HERETO to be the CORPUS of THIS TRUST. Included therein is the use of services of DAVID C. CLARK so that he can maximize his lifetime efforts through the utilization of his Constitutional Rights for the protection of his family in the pursuit of his happiness, through his desire to promote the general welfare, all of which DAVID C. CLARK feels he will achieve because they are sustained by his RELIGIOUS BELIEFS.

THE TRUSTEES by their resolution of purpose may peform and function for any purpose on behalf of any individual, group, or combination of individuals, severally or collectively.

In such instances the powers and authority of the TRUSTEES shall be defined and limited to the general purposes set forth by the DECLARATION OF TRUST and the TRUSTEES' DECLARATION OF PURPOSE.

The TRUST shall have authority to provide itself with operating funds through commercial loans, directly secured by assets or income of THE TRUST, provided such authority is possessed in writing from the BOARD OF TRUSTEES OF THIS TRUST.

Notice is hereby given to all persons, companies, or corporations extending credit to, contracting with, or having claims against this TRUST, that they must look only to the funds and property of the TRUST for payment or for settlement of any debt, tort, damage, judgment, or decree, or for any indebtedness which may become payable hereunder; that the TRUSTEES are not personally liable when dealing with the TRUST properties or assets.

LIABILITIES: The TRUSTEES shall, in the capacity of TRUSTEES and not individually, assume or incur only such liability as may attach to said TRUST property assets. This TRUSTEE liability shall not in any manner jeopardize their individual or personal holdings and for any losses they should suffer for any reason through their services, they shall be reimbursed from the TRUST property to the same extent as would non-interested persons.

DOCUMENT: It is expressly declared that a TRUST, and not a partnership, is hereto created; and that neither the TRUSTEES, OFFICERS, OR CERTIFICATE HOLDERS, present or future, have or possess any beneficial interest in the property or assets of said TRUST, nor shall they be personally liable hereunder, as partners or otherwise; that no TRUSTEE shall be liable for the act or omission of a CO-TRUSTEE, or any other person, whatsoever, whether employed by such TRUSTEE or not, or for anything other than his own, personal breach of TRUST.

CERTIFICATES OF BENEFICIAL INTEREST: The BENEFICIAL INTERESTS, as a convenience, for distribution, are divided into ONE HUNDRED (100) UNITS, substantially in the certificate form hereto attached. They are non-assessable, non-taxable, (under provisions of Sections of the Internal Revenue Service Code), non-negotiable, non-transferable (except back to the TRUST); and the lawful possessor thereof shall be construed to be the true and lawful owner thereof. The lawful owner may, if he or she so desires, cause his/her BENEFICIAL CERTIFICATE to be registered with the SECRETARY OF THE TRUSTEES.

SPENDTHRIFT: The TRUSTEE is not to recognize any transfer, encumbering, mortgage, pledge, hypothecation, order, assignment, of any BENEFICIARY by way of anticipation of any part of the income or principal hereof, and the income and principal of the TRUST shall not be subject in any manner to operation of law, unless otherwise herein provided, and shall be exempt from the claims of creditors and other claimants and from orders, decrees, levies, attachments, garnishments and executions, and other legal or equitable process of proceedings to the fullest extent permissible by law. Each BENEFICIARY is expressly prohibited from any of the above.

DEATH, INSOLVENCY, BANKRUPTCY: The death, insolvency, bankruptcy, of any CERTIFICATE HOLDER, or the transfer of his or her CERTIFICATE by gift, devise, or descent, shall not operate as a dissolution of THIS TRUST, or in any manner affect the TRUST or its operation or mode of business. Ownership of a BENEFICIAL CERTIFICATE shall not entitle the holder to any legal title in or to the TRUST property, nor any individual interest therein, nor in the management thereof; nor shall the death of a holder entitle his or her heir or legal representatives to demand any partition or division of the property of the TRUST, nor any special accounting, but said successor may succeed to the same distributional interest upon the surrender of the CERTIFICATE as held by the deceased for the purpose of reissue to the then lawful holder or owner.

DURATION - CLOSURE: This TRUST shall continue for a period of twenty-five (25) years from date, unless the TRUSTEES shall unanimously determine on an earlier date. The TRUSTEES may at their discretion, because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve TRUST assets, liquidate the assets, distribute and close the TRUST at any earlier date determined by them. The TRUST shall be proportionately and in a pro-rata manner distributed to the BENEFICIARIES. In the event this instrument has been recorded with the Register of Deeds, they shall then file with said Recorder a notice that the TRUST shall terminate and cease, and thereupon, the TRUSTEES shall automatically be discharged hereunder, PROVIDED, their administration and distribution have been made in accordance with the terms and provisions of the TRUST INDENTURE. Otherwise, a court of equity may be invoked to review and correct any tort or error.

RENEWAL: At the expiration of this Agreement the then TRUSTEES, if they so-desire and believe that said TRUST should not be closed, may renew this Agreement for a like or shorter period. A RESOLUTION of said renewal shall be entered upon the MINUTES and also recorded in the Recorder's Office (in the event this Agreement has been Recorded) at least 120 days prior to the expiration hereof. Public notice shall be made in a county newspaper of general circulation not less than 60 days prior to the expiration hereof.

RESTRICTIONS: Nothing herein contained shall be construed to authorize the TRUST to issue CERTIFICATES OF BENEFICIAL INTEREST in excess of the number herein provided, nor for a nominal value at variance with the provisions hereof.

PURPORT: The PURPORT of this instrument is to convey property to TRUSTEES to constitute A TRUST (ESTATE) for the benefit of the BENEFICIARIES, held by the TRUSTEES in TRUST and in joint tenancy for the duration hereof, and to provide for the prudent and economical administration by natural persons acting in a fiduciary capacity, to BEGIN AT ONCE and not to be deferred until after the death of any CREATOR, SETTLOR OR MAKER, as occurs when such TRUST ESTATES are created by Last Will and Testament; the SETTLORS, CREATORS, OR MAKERS of this covenant preferring that the TRUSTEES act solely within their constitutional rights as based upon their common law rights and immunities vouchsafed to citizens of the United States of America and defined in Article IV, Section 2, PROVIDING, that "Citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and Article VI, Section 2, PROVIDING, that 'The Constitution of the United States and the laws made in pursuance thereof shall be the supreme law of the land;" and the 14th Amendment thereof, PROVIDING, that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.". The administration of THIS TRUST shall be amenable to judicial regulation on occasion arising and under the paternalism and protection of the court. Citations applicable and various rulings pertaining to TRUST ESTATES and constitutional rights of contract and collective bargaining (except co-partnership relationship, which is not applicable) may be found in case law which is applicable.

Nothing herein contained shall be construed as an intent to evade or contravene any Federal or State Law, nor to delegate to TRUSTEES any special power belonging exclusively to franchise or incorporation. The intent of the CREATORS OF THIS TRUST is to GRANT to it real and personal properties and in so-doing conveys all right, title and interest therein.

By creating this LEGAL ENTITY, the GRANTORS-CREATORS OF THIS TRUST have exercised their Constitutional Rights.

IN WITNESS WHEREOF the CREATORS hereof and GRANTORS hereto and the ACCEPTORS hereof, for themselves, their heirs, successors, and assigns, have hereunto set their hands and seals in token of the conveyance, delivery and acceptance of property, assets, or other things of value, and the obligations and duties as herein assumed

of said TRUST and assent to all stiuplations herein as imposed and expressed, on this date which is January 5, 1989.

## DAVID C. CLARK, GRANTOR CREATOR

### THE CLARK C. TRUST

By _____
DAVID C. CLARK

AND BY THE ACCEPTORS OF

THE CLARK C. TRUST

-aka-

THE CLARK C. FAMILY TRUST

By _____  Trustee
STEVEN R. SHALLENBERGER, TRUSTEE

and

By _____  Trustee
RUSSELL JACOBSEN, TRUSTEE

---

WITNESSETH: That, we the undersigned do
hereby affirm, witness and attest that the above
Trustees Steven R. Shallenberger and Russell
Jacobsen signed this Trust Indenture in our presence.

By _____
DAVID C. CLARK, WITNESS

By _____
DAVID G. CLARK, WITNESS

---

# EXHIBIT 10

# AMENDMENT TO THE DECLARATION OF TRUST
## OF THE
### CLARK C. TRUST

DAVID C. CLARK and WENDY R. CLARK as GRANTOR-CREATORS of the CLARK C. TRUST did on this date, the 9th day of January 1989, create this AMENDMENT TO THE DECLARATION OF TRUST of the said CLARK C. TRUST, executed on the 6th day of January 1989, in order to CLARIFY the purposes and objectives of the GRANTOR/CREATORS in making said DECLARATION OF TRUST, and does hereby AMEND SAID DECLARATION OF TRUST TO INCLUDE THE FOLLOWING:

THE CLARK C. TRUST is expressly IRREVOCABLE and may not be altered or amended in any respect unless specifically authorized by the DECLARATION OF TRUST INSTRUMENT OR THIS AMEND-MENT, and may not be terminated except through distributions permitted by the DECLARATION OF TRUST INSTRUMENT AND AMENDMENT.

PURPORT: The nature and activities of the CLARK C. TRUST, maintaining assets, holding and controlling titled property, conductig business, and engaging in operational enterprise, include but are not limited to ownership of parts or entire business entities. The TRUSTEES are to establish the organization and performance of this TRUST so that it may NOT be interpreted that this TRUST is such enterprise, titled property, organization, or company, which it simply, but nevertheless owns

THIS TRUST: Is not a Business Trust: it does not allow nor shall it allow for BENEFICIARY investment in the TRUST, voting rights are not nor shall the be given to BENEFICIARIES, assets are vested in the name of the TRUSTEES and are not nor shall never be influenced by control of the BENEFICIARIES until the TRUSTEES have deterined distribution of same.

TRUST ADVISORS: The TRUST may acquire a large fund of investments at various major stock brokerage firms, private investment banks, and other financial and investment entities; that one or more TRUST ADVISORS might be required to bring professional expertise and management of investments of this TRUST, to assist the TRUSTEES. The GRANTOR/CREATORS therefore requires that a provision be made for expert skills to be contracted and acquired. It being the policy of certain investment banks, brokerage houses and other significant firms to refuse to accept TRUSTS as clients unless the TRUST has qualified TRUST ADVISORS. In such event a third party TRUST ADVISOR must needs be appointed.

At all times herein, the TRUST ADVISOR, if appointed by the GRANTOR under separate document, shall be the INITIAL TRUST ADVISOR, but the BOARD OF TRUSTEES, the BENEFICIARIES or the GRANTOR under this Agreement may terminate or change the INITIAL TRUST ADVISOR'S services or limit his (or her) powers, as provided hereunder, and appoint other TRUST ADVISORS. Should the BOARD OF TRUSTEES or the BENEFICIARIES propose a NOMINEE for TRUST ADVISOR, the person nominated must not have any connection whatsoever, either private, personal, professional, or family of the BENEFICIARIES or the TRUSTEES.

The TRUST ADVISOR may resign at any time during the TRUST administration by giving the BOARD OF TRUSTEES a thirty (30) day written notice. The GRANTOR may inform the BOARD OF TRUSTEES that no INITIAL TRUST ADVISOR has or will be appointed.

POWERS OF TRUST ADVISORS: Subject only to the final approval of the EXECUTIVE TRUSTEE(S), the TRUST ADVISOR or TRUST ADVISORS shall have full power and authority to direct the TRUST to make investments, sale or purchase or assets, reinvestments, contracts or payments (other than distributions to BENEFICIARIES); and have authority to direct the TRUSTEES to employ INVESTMENT COUNSEL in the investment and reinvestment of the assets of the TRUST; and shall have full power and authority to direct the voting, for any purpose, of any and all shares of stock and/or securities held in this TRUST. All directions by the TRUST ADVISOR(S) to the TRUSTEES shall be in writing. If there be more than one (1) TRUST ADVISOR they shall act jointly or by the act of a majority of them in they event they do not all agree. Fees paid to the TRUST ADVISOR (S) are to be charged to the earnings achieved annually through their efforts, or from the CORPUS if necessary

CREATE ADDITIONAL TRUSTS: By regular act, TRUSTEES may provide for the formulation of additional TRUSTS without notice to the BENEFICIARIES or to any other person or persons. THIS TRUST may be the GRANTOR/CREATOR of such TRUSTS and may pledge or convey any or all of the assets of THIS TRUST in the process in order to arrange the TRUST'S affairs in the best interest of this TRUST.

PROVIDED, THAT in making such TRUSTS the TRUSTEES shall exercise care in the preparation of such documents to protect the rights of the BENEFICIAL INTEREST of the BENEFICIARIES OF THIS TRUST. THE CLARK C. TRUST shall be the sole BENEFICIARY of the TRUST(S) being established and that in all ways, such new TRUST(S) shall be bound by all of the provisions, powers, restrictions, and other requirements that are included in the CLARK C. TRUST.

**DAVID C. CLARK and WENDY R. CLARK, GRANTOR-CREATORS**

By _____ and    By _____
DAVID C. CLARK,              WENDY R. CLARK

AND BY THE TRUSTEE(S)
OF THE CLARK C. TRUST

By _____ Executive Trustee
STEVEN R. SHALLENBERGER, EXECUTIVE TRUSTEE

By _____
RUSSELL JACOBSEN, TRUSTEE

WITNESSETH: That, we the undersigned do hereby affirm, witness and attest that the above Trustees Steven R. Shallenberger and Russell Jacobsen signed this Trust-Indenture in our presence.

By _____
DAVID C. CLARK, WITNESS

By _____
DAVID G. CLARK, WITNESS

AMENDMENT to the DECLARATION OF TRUST of the CLARK C. TRUST - Page 2 of 2

# EXHIBIT 11

# AMENDED DECLARATION OF TRUST
# THE CLARK C. TRUST

THE GRANTOR, DAVID C. CLARK, on this date, September 26, 1996 hereby recognizes the above-designated TRUSTEES, STEVEN R. SHALLENBERGER and RUSSELL JACOBSEN, to be, in fact, TRUSTEES OF THIS TRUST, THE CLARK C. TRUST, created and established January 5, 1989 as evidenced by TRUST INDENTURE of that date, and initial AMENDMENT dated January 9, 1989.

The GRANTOR for and in consideration of the objects and purposes herein set forth, the cash sum of Ten Dollars in hand paid and other considerations of value, the receipt of which was acknowledged, did agree to sell, assign, convey and deliver unto said TRUSTEES, IN TRUST, who are to hold legal title in joint tenancy and not as tenants-in-common, to collectively act by virtue of this covenant as a BOARD OF TRUSTEES under the name herein designated, certain properties, business projects, operations under way or contemplated, dealing in equities, formulae, entities, patents, copyrights, business good-will, or other business desired to be engaged in by said TRUSTEES.

The TRUST name and other things of value to constitute A TRUST (ESTATE), including rights in reversion or remainder wherever situate, and other things of value and having its principal place of business at:

THE CLARK C. TRUST
-aka- CLARK FAMILY TRUST
41121 Kathlean Street
Fremont, Alameda County, California 94538

The above-named TRUSTEES, for themselves and their Successors IN TRUST, do hereby agree to accept properties real and personal to be conveyed, and acknowledge acceptance and delivery of all of the property specified, together with all the terms of THE TRUST herein set forth, agreeing to conserve and improve THE TRUST (ESTATE), to invest and reinvest the funds of SAID TRUST in such manner as to increase the financial rating of the TRUST during the period of outstanding liabilities of the various properties and enterprises; in commerce for gain, exercising their best judgment and discretion in accordance with the TRUST MINUTES, making distributions of portions of the proceeds and income as in their discretion and according to the MINUTES should be made, making periodic reports of business transactions and upon final liquidation, distributing the assets to the BENEFICIARIES as their interests may appear; and in all other respects administering SAID TRUST (ESTATE) in good faith in conformity hereto.

COMPLIANCE WITH CODES AND REGULATIONS The GRANTOR has made and is making every attempt to be in compliance with applicable Internal Revenue Codes. Although the following is primarily by way of instruction to Trustees, it is nonetheless binding. THIS TRUST shall be administered, managed, interpreted, and construed in such a way as to reflect the qualification and meaning of the following:

AMENDED DECLARATION OF TRUST - THE CLARK C. TRUST - Page 2 of 12

1. Cause gifts to the TRUST hereunder to qualify for annual gift tax exclusions under the provisions of §2503 (b)of the Internal Revenue Code (IRC), or any corresponding Section of any future revision of said Code;

2. TRUSTEES holding office shall be "non-adverse" parties according to the meaning of IRC §672 any FIDUCIARY not in compliance shall resign immediately after first appointing a qualified SUCCESSOR;

3. THIS TRUST shall be operated so as NOT to violate any Grantor Trust Rules within the meaning of IRC Sections §671 - §678 that may cause THIS TRUST to be classified a GRANTOR TRUST;

4. IRC Sections §661 - §663 and application of Treasury Regulations Sections § 1.661 - §1.663 shall be followed in making managerial decisions to insure tax filing adherence as a COMPLEX TRUST;

5. Operational procedures should comply with Treasury Regulations Section §301.7701 so that THIS TRUST is not classed as an association, partnership, or BTO (Business Trust Organization) for tax purposes.

FAILURE TO COMPLY. In the event that the TRUSTEES shall fail to comply through distributions of assets of the TRUST, investments of TRUST assets, or administration of TRUST assets in any way that is not in compliance with Internal Revenue Code Section §2503, then such acts shall be considered a nullity; provided, however, that corrective action and appropriate remedy shall be applied by the TRUSTEES. Should the Internal Revenue Service determine upon something other than a classification of COMPLEX TRUST, the TRUSTEES may correct any errors in management application.

PARTIAL INVALIDITY CLAUSE. Should any provision, section, paragraph, or sentence of THIS TRUST INDENTURE, or subsequent AMENDMENTS, any RESOLUTIONS of the BOARD of TRUSTEES, or of THIS TRUST MINUTES be held invalid, unenforceable, or unlawful, it shall be severable; none of the remaining provisions THIS TRUST, AMENDMENTS, RESOLUTIONS, or MINUTES shall be affected, unpaired, or rendered inoperative, but shall be given full legal force and effect as if all the management documentation and formal expressions of THIS TRUST were lawfully valid.

TRUSTEES. There shall not be fewer than two TRUSTEES but may be increased in number for practical reasons beneficial to the TRUST. THE TRUSTEES herein mentioned by name or their SUCCESSORS elected to fill vacancies, shall hold office, have and exercise collectively the exclusive management and control of the TRUST property and business affairs;

PROVIDED, HOWEVER, that a TRUSTEE may resign or be removed from office by a RESOLUTION of unanimous concurrence of the remaining TRUSTEES, when in their opinion said TRUSTEE shall have been guilty of fraud, malfeasance in office, gross neglect of duty, or for cause by the mandate of a court of competent jurisdiction; and

PROVIDED FURTHER, that in the event of death, removal from office or resignation, THE TRUSTEES shall appoint or elect SUCCESSOR TRUSTEE(S) by the unanimous concurrence of the remaining TRUSTEES. Should the entire BOARD OF TRUSTEES become vacant, a Court of Equity may appoint one TRUSTEE, who in turn shall appoint the additional TRUSTEES. Should objection be filed to appointment of additional TRUSTEES, the same shall be spread upon the MINUTES. Any such objection shall deprive the candidate from accepting the trusteeship.

The signing and acknowledging of this Agreement by the herein above noted TRUSTEES or the signing and acknowledging of appropriate MINUTES by TRUSTEES subsequently elected or appointed, shall constitute their acceptance of THIS TRUST; and their acknowledgment of ITS copyrights and registration and the TRUST property, assets and emoluments thereof shall immediately vest in the new TRUSTEE or TRUSTEES without any further act or conveyance.

TRUSTEES' MEETINGS: By a regular act of the TRUSTEES they may provide for meetings of the BOARD OF TRUSTEES: at stated intervals without notice, and special meetings may be called at any time by two or more TRUSTEES upon three (3) days written notice, which may be waived. At any regular or special meeting a MAJORITY OF THE TRUSTEES shall constitute a quorum for conducting busines, PROVIDED, affirmative action may only be had upon a MAJORITY VOTE of the TRUSTEES whether present or absent; except that at special meetings called for a special purpose the MAJORITY present may affirmatively act in emergency matters.

POWERS OF TRUSTEES: Trustees may do anything any individual may legally do in any state or county, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein especially noted, at their discretion, for the benefit of THIS TRUST, such as viz: buy, sell, or lease real estate for the surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks or copyrights, buy, sell, or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses, or other trading establishments or places of business of any kind; construct, buy, sell, lease, or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging TRUST property for the payment thereof; hypothecate assets, property or both, of the TRUST in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous.

A MINUTE OF RESOLUTIONS OF THE BOARD OF TRUSTEES authorizing what they determine to do or have done shall be evidence that such an act is within their power. Anyone lending or paying money to the TRUSTEES shall not be obliged to see the application thereof; all funds paid into the treasury are and become part of the CORPUS of THIS TRUST.

ADMINISTRATION: The TRUSTEES shall regard this instrument and the ORIGINAL TRUST INDENTURE and AMENDMENT as their sufficient guide, supplemented from time to time by their RESOLUTIONS (said RESOLUTIONS to be ALWAYS ratified by a MAJORITY of the TRUSTEES then in office and participating in the issuing meeting) covering contingencies as they arise and

are recorded in the MINUTES of their meetings, which are the by-laws, rules and regulations of THIS TRUST.

<u>OFFICERS AND MANAGEMENT</u>: The TRUSTEES may in their discretion elect among their number an EXECUTIVE TRUSTEE, CO-EXECUTIVE TRUSTEE, SECRETARY TRUSTEE, TREASURER TRUSTEE, AGENT TRUSTEES, GUARDIAN TRUSTEES, SUCCESSOR TRUST-EES, or any other offices they may deem expedient for proper functioning. TRUSTEES may hold two or more offices simultaneously, their duties being such as are usual or are prescribed. They may employ AGENTS, EXECUTIVES, or other EMPLOYEES, or designated third persons to hold funds for specific purposes.

<u>EXPENDITURES</u>: The TRUSTEES shall fix and pay compensation of all officers, employees, or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by a MAJORITY of the BOARD OF TRUSTEES.

<u>ACCUMULATE INCOME AND PAY EXPENSES</u>. TRUSTEES shall have the capacity to accumulate any amounts of income which the TRUSTEES shall determine NOT to distribute to or expend for the benefit of ALL the BENEFICIARIES. TRUSTEES shall pay from the income of THIS TRUST all costs, charges, and expenses of administering the TRUST, including all taxes levied thereto, as may be resolved by the BOARD OF TRUSTEES;

<u>BORROW FUNDS</u>. TRUSTEES shall have authority to provide this TRUST with operating funds, when required, obtaining loans directly secured by assets or income of the TRUST; this authorization shall be expressed in a written RESOLUTION for any purpose as provided hereunder in the administration of the TRUST

<u>LOAN ASSETS</u>. TRUSTEES may loan any of the assets with adequate interest and security, at the TRUSTEES' discretion, to any competent individual, business concern or entity, except the GRANTOR or those adding property to THIS TRUST;

<u>CONSTRUCTION</u>: The TRUSTEES, OFFICERS, AGENTS, OR EMPLOYEES possess only such authority as is awarded them herein. Authority is understood and meant to be similar to that awarded an EXECUTOR of an ESTATE wherein the TESTATOR directs (illustration): "That my Executor is directed to handle the estate in the manner he thinks to be to the best interest limited by the terms hereof, without the necessity of resort to the court for permission or approval of any transaction, intending herein to leave open for the court the question of conscientious dealings of my Executor only."

<u>TRUSTEES' DECLARATION OF PURPOSE</u>. The TRUSTEES shall be required to accept rights, title, and interest in and to real and personal properties, whether tangible or intangible, conveyed by the DAVID C. CLARK, CREATOR HEREOF AND GRANTOR HERETO to be the CORPUS of THIS TRUST.

THE TRUSTEES by their resolution of purpose may peform and function for any purpose on behalf of any individual, group, or combination of individuals, severally or collectively.

AMENDED DECLARATION OF TRUST - THE CLARK C. TRUST - Page 5 of 12

In such instances the powers and authority of the TRUSTEES shall be defined and limited to the general purposes set forth by the DECLARATION OF TRUST, THE AMEND-MENTS and the TRUSTEES' DECLARATION OF PURPOSE.

The TRUST shall have authority to provide itself with operating funds through commercial loans, directly secured by assets or income of THE TRUST, provided such authority is possessed in writing from the BOARD OF TRUSTEES OF THIS TRUST.

Notice is hereby given to all persons, companies, or corporations extending credit to, contracting with, or having claims against this TRUST, that they must look only to the funds and property of the TRUST for payment or for settlement of any debt, tort, damage, judgment, or decree, or for any indebtedness which may become payable hereunder; that the TRUST-EES are not personally liable when dealing with the TRUST properties or assets.

LIABILITIES. The TRUSTEES shall, in the capacity of TRUSTEES and not individually, assume or incur only such liability as may attach to said TRUST property assets. This TRUSTEE liability shall not in any manner jeopardize their individual or personal holdings and for any losses they should suffer for any reason through their services, they shall be reimbursed from ths TRUST property to the same extent as would non-interested persons, only such liability as may attach to the assets of THIS TRUST. Any liability arising shall not in any manner jeopardize the serving FIDUCIARIES individual or personal holdings and should any losses be incurred, the same shall be reimbursed by the TRUST. FIDUCIARIES shall NOT be required to furnish bond; may serve without bond, provided, however, that if a FIDUCIARY so desires or is requested by the BOARD, the same may execute a bond, costs to be borne by THIS TRUST, with an authorized surety company, payable to THIS TRUST to secure the faithful performance of that FIDUCIARYS duties hereunder.

DOCUMENT. It is expressly declared that a TRUST, and not a partnership, is hereto created; and that neither the TRUSTEES, OFFICERS, OR CERTIFICATE HOLDERS, present or future, have or possess any beneficial interest in the property or assets of said TRUST, nor shall they be personally liable hereunder, as partners or otherwise; that no TRUSTEE shall be liable for the act or omission of a CO-TRUSTEE, or any other person, whatsoever, whether employed by such TRUSTEE or not, or for anything other than his own, personal breach of TRUST.

CERTIFICATES OF BENEFICIAL INTEREST. The BENEFICIAL INTERESTS, as a conve-nience, for distribution, are divided into ONE HUNDRED (100) UNITS, substantially in the certificate form hereto attached. They are non-assessable, non-taxable, (under provisions of Sections of the Internal Revenue Service Code), non-negotiable, non-transferable (except back to the TRUST); and the lawful possessor thereof shall be construed to be the true and lawful owner thereof. The lawful owner may, if he or she so desires, cause his/her BENEFICIAL CERTIFICATE to be registered with the SECRETARY OF THE TRUSTEES.

POWERS OF BENEFICIARIES. Certain rights assumed under law or State statute relating to the abilities of the BENEFICIARIES may apply. ALL holders of Certificates of Beneficial Interest shall have the power and right to: inspect all books and records of the TRUST; inspect all books and records of the TRUSTEES; inspect all property .

SPENDTHRIFT: The TRUSTEE is not to recognize any transfer, encumbering, mortgage, pledge, hypothecation, order, assignment, of any BENEFICIARY by way of anticipation of any part of the income or principal hereof, and the income and principal of the TRUST shall not be subject in any manner to operation of law, unless otherwise herein provided, and shall be exempt from the claims of creditors and other claimants and from orders, decrees, levies, attachments, garnishments and executions, and other legal or equitable process of proceedings to the fullest extent permissible by law. Each BENEFICIARY is expressly prohibited from any of the above.

DEATH, INSOLVENCY, BANKRUPTCY: The death, insolvency, bankruptcy, of any CERTIFICATE HOLDER, or the transfer of his or her CERTIFICATE by gift, devise, or descent, shall not operate as a dissolution of THIS TRUST, or in any manner affect the TRUST or its operation or mode of business. Ownership of a BENEFICIAL CERTIFICATE shall not entitle the holder to any legal title in or to the TRUST property, nor any individual interest therein, nor in the management thereof; nor shall the death of a holder entitle his or her heir or legal representatives to demand any partition or division of the property of the TRUST, nor any special accounting, but said successor may succeed to the same distributional interest upon the surrender of the CERTIFICATE as held by the deceased for the purpose of reissue to the then lawful holder or owner.

DURATION - CLOSURE: This TRUST shall continue for a period of twenty-five (25) years from January 5, 1989, unless the TRUSTEES shall unanimously determine on an earlier date.

CLOSURE ADVANCED: For any sufficient reason necessary to protect or conserve the assets of THIS TRUST, the TRUSTEES may unanimously settle upon an earlier date to close and liquidate the assets; in a pro rata manner according to the number of Units of Beneficial Interest on the face of the Certificates, shall proportionately distribute, as provided elsewhere herein, all of the proceeds to the BENEFICIARIES. In the event this instrument has been recorded, the TRUSTEES shall file a notice with said Registrar that THIS TRUST shall terminate and cease; thereupon, the TRUSTEES shall be dismissed hereunder, provided that their final duties of administration and complete asset distribution have been made in accordance with the terms and provisions of THIS TRUST INDENTURE; otherwise, a Court of Equity may be invoked to examine the records of the TRUST and correct any private or civil wrong against the TRUST or error in administration.

RENEWAL OF INDENTURE. The GRANTOR in setting THIS TRUST'S period of duration hereunder, at the time, felt this to be in the best interest of the BENEFICIARIES and the TRUST, providing, however, at the closure specified for THE CLARK C. TRUST herein, the then TRUSTEES, if they so resolve that said TRUST should not be terminated by examining the state of affairs that exist at that time against the purport of this DECLARATION OF TRUST and the other provisions hereunder, may renew this INDENTURE for a like or shorter period. A Resolution of Renewal shall be included in the Minutes, recorded in the Registrar's Office (in the event this DECLARATION OF TRUST has been recorded) and published with all BENEFICIARIES at least 120 days prior to the expiration hereof, public notice shall be made in a newspaper of general circulation in the county where THIS TRUST was established not less than 60 days prior to the expiration hereof.

ASSIGNMENT OF BENEFICIAL INTEREST. Only the GRANTOR hereof, except as elsewhere herein provided, has the power and authority to withdraw Certificates of Beneficial Interest..The Certificate Holder may surrender the Certificate to the BOARD of TRUSTEES and request that the units represented be reassigned, naming a candidate to be the new BENEFICIARY; the TRUSTEES have the sole power to act upon the redistribution of surrendered units; they shall have the power to follow the request, looking to provisions herein as their authority to make the new assignment of the units; should the TRUSTEES, at the direction of the GRANTOR, decide NOT to honor the request, they may select a new nominee using the provisions of this TRUST INDENTURE in determining the worthiness of the new BENEFICIARY.

In the event a Certificate Holder should cease to exist, the legal HEIR of that Holder, except the GRANTOR hereof, is entitled to receive that Holder's units, providing the relationship of the HEIR APPARENT does not violate any provisions herein; the BOARD OF TRUSTEES has the complete authority to receive that Certificate and reissue its units in the form of new Certificates to those having claim, in any division of units the TRUSTEES deem appropriate; further, should NO valid HEIR be found, then the BOARD OF TRUSTEES is to designate a recipient(s), with the concurrence of the GRANTOR hereof, to receive those units.

ASSET CONTROL. The TRUSTEES are hereby granted the expressed full power to control and manage the assets of THIS TRUST in the form of investment in which they are received without order or mandate, pemission or consent, approval or confirmation of any court or person(s), subject only to the restrictions herein noted; including, but not limited to, the capacity to continue and operate any business concern(s) granted by the GRANTOR; to do any and all things deemed needful or appropriate by the TRUSTEES , including the power to incorporate the business and to put additional capital into the business, for such time as the TRUSTEES shall deem advisable, without liability for loss resulting from the continuance or operation of the business except as elsewhere herein provided; and to close out, liquidate, or sell the business at such time and upon such terms as the TRUSTEES shall deem appropriate and profitable.

BOARD ACTION: A Minute of RESOLUTION of the TRUSTEES authorizing what they determine to do or have done shall be the only evidence required that such an act is within their power, providing that it does not conflict with any provision of TRUST INDENTURE and its AMENDMENTS hereunder.

AUTHORITY. The BOARD OF TRUSTEES: shall look upon this document as adequate authority and guide for operating THIS TRUST, shall stipulate their management abilities by adopting RESOLUTIONS to cover contingencies as they arise;

BINDING DOCUMENTS. The BOARD OF TRUSTEES shall have permission hereby to endorse, execute, and deliver any and all deeds, mortgages, leases, contracts, agreements, bills of sale, notes, transfers, assignments, powers of attorney, proxies, consents,waivers, and all other documents and iinstruments pertaining to THIS TRUST and the assets hereunder in the hands of the TRUSTEES, indifferent to the period of duration of THIS TRUST;

CREATING TRUSTS. Under the terms and conditions hereunder and upon the BOARD OF TRUST-EES acting in unanimous accord, THIS TRUST may establish other TRUSTS as the CREATOR thereof and the GRANTOR thereto, so long as in so doing the integrity or the net worth of THIS TRUST is not harmed; provided, however, it is with the express written approval of ALL BENEFI-CIARIES.

ADMINISTRATION. TRUSTEES may elect among their number any OFFICERS as may be deemed expedient for proper functioning; employ AGENTS, EXECUTIVES, or other EMPLOYEES, ac-countants, attorneys, and such professionals; pay reasonable compensation for services and appor-tion same between income and principal. Any EMPLOYEE with direct access to confidential TRUST records will be designated as an AGENT TRUSTEE properly charged with FIDUCIARY responsi-bility. The GRANTOR hereby declares the following guidelines for administrative conduct as instrucction to the TRUSTEES.

1. A primary obligation shall be to obey and carry out ALL of the terms of the TRUST INDEN-TURE AS AMENDED to the best of their collective ability, remembering that in prudently manag-ing THIS TRUST in the greatest interest of the BENEFICIARIES, the fulfillment of the purport of this TRUST INDENTURE should weigh heavily in the decisions of the TRUSTEES;

2. Without limiting the generality of the foregoing or any other provisions herein, to manage, con-trol, operate, invest, re-invest, sell, exchange, lease, mortgage, encumber, and/or deal with the property of THIS TRUST for and on behalf of the TRUST and the BENEFICIARIES thereof to the same extent and with the same powers that any individual would have with respect to his or her property and funds;

3. Combine assets of two or more TRUSTS if the provisions and terms of each TRUST are sub-stantially identical, and to administer them as a single TRUST, if the TRUSTEES reasonably deter-mine that the administration as a single TRUST is consistent with the GRANTOR'S intent and facilitates the TRUSTEES administration without defeating or impairing the interests of the BEN-EFICIARIES.

4. Divide any of the assets into separate TRUSTS or create separate TRUSTS if the TRUSTEES reasonably deem it appropriate and the division or creation is compatible with the GRANTOR'S purpose and facilitates the TRUST'S administration without defeating or impairing the interests of the BENEFICIARIES.

5. The TRUSTEES have the sole authority to grant or deny attendance to any person or persons, except other TRUSTEES, at any particular meeting of the BOARD of TRUSTEES; provided, that the TRUSTEES are being responsive to their FIDUCIARY duty to supply reasonable opportunity for BENEFICIARIES to be made aware of the financial situation and related information about the TRUST.

6. TRUSTEES may permit any Certificate Holder who will sign an "Agreement of Confidential-ity" to attend meetings of the BOARD OF TRUSTEES without invitation, provided that a notice in

writing is submitted at least 30 days prior to the meeting (which may be waived) allow ALL Certificate Holders at the annual meeting without notice.

MANAGEMENT. Unless threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve TRUST ASSETS, TRUSTEES may liquidate the assets, distribute and close the TRUST at any earlier date determined by them. The TRUST shall be proportionately and in a pro-rata manner distributed to the BENEFICIARIES. In the event this instrument has been recorded with the Register of Deeds, they shall then file with said Recorder a notice that the TRUST shall terminate and cease, and thereupon, the TRUSTEES shall automatically be discharged hereunder, PROVIDED, their administration and distribution have been made in accordance with the terms and provisions of the TRUST INDENTURE AS AMENDED. Otherwise, a court of equity may be invoked to review and correct any tort or error.

RENEWAL: At the expiration of this Agreement the then TRUSTEES, if they so-desire and believe that said TRUST should not be closed, may renew this Agreement for a like or shorter period. A RESOLUTION of said renewal shall be entered upon the MINUTES and also recorded in the Recorder's Office (in the event this Agreement has been Recorded) at least 120 days prior to the expiration hereof. Public notice shall be made in a county newspaper of general circulation not less than 60 days prior to the expiration hereof.

RESTRICTIONS: Nothing herein contained shall be construed to authorize the TRUST to issue CERTIFICATES OF BENEFICIAL INTEREST in excess of the number herein provided, nor for a nominal value at variance with the provisions hereof.

PURPORT: The PURPORT of this instrument is to convey property to TRUSTEES, to constitute A TRUST (ESTATE) for the benefit of the BENEFICIARIES, held by the TRUSTEES in TRUST and in joint tenancy for the duration hereof, and to provide for the prudent and economical administration by natural persons acting in a fiduciary capacity, to BEGIN AT ONCE and not to be deferred until after the death of any CREATOR, GRANTOR OR MAKER, as occurs when such TRUST ESTATES are created by Last Will and Testament; the GRANTORS, CREATORS, OR MAKERS of this covenant preferring that the TRUSTEES act solely within their constitutional rights as based upon their common law rights and immunities vouchsafed to citizens of the United States of America and defined in Article IV, Section 2, PROVIDING, that "Citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and Article VI, Section 2, PROVIDING, that The Constitution of the United States and the laws made in pursuance thereof shall be the supreme law of the land;" and the 14th Amendment thereof, PROVIDING, that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.". The administration of THIS TRUST shall be amenable to judicial regulation on occasion arising and under the paternalism and protection of the court. Citations applicable and various rulings pertaining to TRUST ESTATES and constitutional rights of contract and collective bargaining (except co-partnership relationship, which is not applicable) may be found in case law which is applicable.

Nothing herein contained shall be construed as an intent to evade or contravene any Federal or State Law, nor to delegate to TRUSTEES any special power belonging exclusively to franchise or incorporation. The intent of the CREATOR OF THIS TRUST is to GRANT to it real and personal

properties and in so-doing conveys all right, title and interest therein.

By creating this LEGAL ENTITY, the GRANTOR-CREATOR OF THIS TRUST has exercised ITS Constitutional Rights. THIS TRUST'S assets are in the complete control of the TRUSTEES who shall exercise all powers herein conferred after the termination of any TRUST and until the same is fully distributed, as follows:

1.    RECORDS. TRUSTEES shall keep detailed and accurate record of all meetings, maintain all legal and important papers of THIS TRUST in a businesslike manner, and generally record an accounting of all transactions. The ability to request information is hereby insured to the BENEFI-CIARIES relating to the status, operation, and plans of the BOARD, providing such information is kept confidential to the same degree required of any FIDUCIARY;

2.    PROPERTY. TRUSTEES shall register or record and take title to any property in the name of the TRUSTEES or in the name of a NOMINEE with or without disclosure of the TRUST, or to keep and retain any such property, or any part thereof, unregistered and in such condition that it may pass by delivery, without thereby enlarging or reducing the TRUSTEES' liability as FIDUCIARY, however, no such registration, recording and/or holding by the TRUSTEES shall relieve the TRUSTEES from responsibility for the safe conservation and distribution of the TRUST in accord with the terms and provisions hereof.

3.    DISTRIBUTIONS. TRUSTEES shall divide or distribute any TRUST property hereunder (including the satisfaction of any pecuniary bequest); make distributions or divisions in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property, and to do so without regard to the income tax basis of specific property allocated to a BENEFICIARY (including any TRUST) insofar as each BENEFICIARY shall receive his or her proportionate share of the TRUST according to the number of units registered in that BENEFICIARY'S Certificate of Beneficial Interest;

FUNCTIONING. This BOARD OF TRUSTEES may perform and function for any purpose on behalf of any individual, group, or aggregation of individuals, severally or collectively, by recording the same as a Minute or in Resolution form in the official records of THIS TRUST.

EXCULPATORY PROVISIONS. The TRUSTEES and appointed officers, agents and other workers are independent contractors or employees and are NOT personally liable. The TRUSTEES shall have in the capacity of FIDUCIARY, not individually, only such liability as may attach to the assets of THIS TRUST.

CHARITABLE CONTRIBUTIONS. The BOARD OF TRUSTEES may make donations, by unanimous consent of the BOARD of TRUSTEES, from the assets of THIS TRUST, income, principal, or both, to any qualified charitable entity, choice of which is at the sole discretion of the TRUSTEES (within the meaning of Section §501(c)3 of the Internal Revenue Code), except as otherwise instructed by the GRANTOR; provided, however, that BENEFICIARIES are NOT given the power to initiate, order, or encourage this activity, but they ALL must ratify each occurrence of such action.

AMENDMENTS. The GRANTOR retains the power to amend any parts of this TRUST INDEN-TURE AS AMENDED, without notice. Nothing in this document is to be construed as giving authority to the TRUST, or any other person(s) to have the power to amend any parts) of THIS TRUST INDENTURE, with one exception; should the GRANTOR liberate his ability to amend the TRUST INDENTURE and if full written approval is obtained from ALL BENEFICIARIES, TRUSTEES may amend the TRUST by a unanimous decision, insofar as so doing will NOT be in conflict with the purport hereunder. Further, the AMENDMENTS shall be attached to this INSTRUMENT, jointly with the evidence of approval signed by ALL BENEFICIARIES.

FURTHER: THIS TRUST may also be known to do business as:

The Clark Family Trust

IN WITNESS WHEREOF the CREATOR hereof and GRANTOR hereto and the ACCEPTORS hereof, for themselves, their heirs, successors, and assigns, have hereunto set their hands and seals in token of the conveyance, delivery and acceptance of property, assets, or other things of value, and the obligations and duties as herein assumed as TRUSTEES of said TRUST and assent to all stiuplations herein as imposed and expressed, on this date.

OF THE

**GRANTOR CREATOR, DAVID C. CLARK**

By _____

DAVID C. CLARK, GRANTOR

AND BY THE ACCEPTORS HEREOF OF THE

# CLARK C. TRUST

BY _____

STEVEN R. SHALLENBERGER, EXECUTIVE TRUSTEE

BY _____

RUSSELL JACOBSEN, TRUSTEE

AMENDED DECLARATION OF TRUST - THE CLARK C. TRUST - Page 12 of 12

# EXHIBIT 12

RECORDING REQUESTED BY

DAVID C. CLARK
AND WHEN RECORDED MAIL THIS DEED AND UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO

NAME   DAVID C. CLARK
STREET
ADDRESS 41121 KATHLEAN ST.
CITY
STATE  FREMONT CALIFORNIA 94538
ZIP

Title Order No. __N/A__   Escrow No __N/A__

RECORDED IN OFFICIAL RECORDS
OF ALAMEDA COUNTY, CALIF.
RENE C. DAVIDSON, CO RECORDER

'89 AUG 2 PM 2 36

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TAX EXEMPT, CONSIDERATION LESS THAN $100.00.    TAX KEY # R&T 11911
INNER SPOUSAL TRANSFER.

## QUITCLAIM DEED

DOCUMENTARY TRANSFER TAX $ _____
☐ computed on full value of property conveyed, or
☐ computed on full value less value of liens and
encumbrances remaining at the time of sale.

Signature of Declarant or Agent Determining Tax    Firm Name

__WENDY R. CLARK__

(name or type name of grantors)

the undersigned grantor(s), for a valuable consideration, receipt of which is hereby acknowledged, do **es** hereby remise,
for the sum of TEN DOLLARS ($10.00) and other considerations of value
release and forever quitclaim to DAVID C. CLARK

the following described real property in the City of FREMONT

County of ALAMEDA                    , State of California:

LOT 43, IN BLOCK 3, AS SAID LOT AND BLOCK ARE SHOWN ON THE MAP OF "TRACT 1975,
FREMONT FIELDS UNIT NO. 5, CITY OF FREMONT, ALAMEDA COUNTY, CALIFORNIA", FILED
FEBRUARY 4, 1959, IN BOOK 39 OF MAPS, AT PAGES 46 AND 47 IN THE OFFICE OF THE
COUNTY RECORDER OF ALAMEDA COUNTY.

SEE EXHIBIT "A" FULL RECONVEYANCE ATTACHED HEREWITH.

COMMONLY KNOWN AS: 41121 KATHLEAN ST.
FREMONT, CA.

Assessor's parcel No. 525-1118-11

Executed on __July 28__, 19**89** at __Fremont, California__
(City and State)

__Wendy R Clark__

WENDY R. CLARK

STATE OF CALIFORNIA
                              } ss
COUNTY OF __ALAMEDA__

On this __28__ day of __July__ in the year 19**89** before me,
the undersigned, a Notary Public in and for said State, personally appeared
__Wendy R. Clark__

_____ personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person__ whose name__
__is__ subscribed to the within instrument and acknowledged to me that
__She__ executed it.

WITNESS my hand and official seal.

_____
Notary Public in and for said State

OFFICIAL SEAL
RAY ALLEN HARRIS
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires Feb. 9, 1990

(This area for official notarial seal)

MAIL TAX
STATEMENTS TO _____
                 NAME          ADDRESS          ZIP

WOLCOTTS FORM 790 Rev. 8-84
QUITCLAIM DEED (price class 3)

1984 WOLCOTTS, INC.

# EXHIBIT 13

89-272093

RECORDING REQUESTED BY
DAVID C. CLARK
AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO

NAME DAVID C. CLARK
STREET 41121 KATHLEAN ST.
ADDRESS FREMONT, CALIFORNIA 94538
CITY
STATE
ZIP

RECORDED IN OFFICIAL RECORDS
OF ALAMEDA COUNTY, CALIF.
RENE C. DAVIDSON, CO. RECORDER

'89 OCT 4 PM 1 12

Title Order No. __N/A__     Escrow No. __N/A__      A11

_____SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

TAX EXEMPT, CONSIDERATION LESS THAN $100.     TAX KEY # R&T 11911

# QUITCLAIM DEED

DOCUMENTARY TRANSFER TAX $ ___GIFT___
☐ computed on full value of property conveyed, or
☐ computed on full value less value of liens and
encumbrances remaining at the time of sale.

Signature of Declarant or Agent Determining Tax     Firm Name

DAVID C. CLARK

(name or name of grantor(s))

the undersigned grantor(s), for a valuable consideration, receipt of which is hereby acknowledged, does__ hereby remise,
**for the sum of TEN DOLLARS ($10.00) and other considerations of value,**
release and forever quitclaim to  THE CLARK C. FAMILY TRUST, TRUSTEE WENDY R. CLARK AS TRUSTEE
                                   DAVID C. CLARK TRUSTEE

the following described real property in the City of FREMONT

County of  ALAMEDA                          , State of California:

LOT 43, IN BLOCK 3, AS SAID LOT AND BLOCK ARE SHOWN ON THE MAP OF "TRACT 1975,
FREMONT FIELDS UNIT NO. 7, CITY OF FREMONT, ALAMEDA COUNTY, CALIFORNIA", FILED
FEBRUARY 4, 1959, IN BOOK 39 OF MAPS, AT PAGES 46 AND 47 IN THE OFFICE OF THE
COUNTY RECORDER OF ALAMEDA COUNTY.

SEE EXHIBIT "A" FULL RECONVEYANCE ATTACHED HEREWITH.

COMMONLY KNOWN AS:  41121 KATHLEAN ST.
                    FREMONT, CA.

Assessor's parcel No. 525-1118-11

Executed on _October 4_, 19_89_ at _Fremont, Ca_

                                    _____
                                    DAVID C. CLARK

STATE OF CALIFORNIA
                                    } SS
COUNTY OF _Alameda_

On this _4th_ day of _October_ in the year 19_89_ before me
the undersigned, a Notary Public in and for said State, personally appeared
_DAVID C. CLARK_

_____ personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person_ whose name_
_is_ subscribed to the within instrument, and acknowledged to me that
_he_ executed it

WITNESS my hand and official seal

_Susan E Harris_
Notary Public in and for said State

OFFICIAL SEAL
SUSAN E HARRIS
Notary Public-California
ALAMEDA COUNTY
My Comm. Exp. Feb. 8, 1993

(This area for official notarial seal)

MAIL TAX
STATEMENTS TO  CLARK C. FAMILY TRUST  41121 KATHLEAN ST. FREMONT 94538
               NAME                    ADDRESS                    ZIP

# EXHIBIT 14

## MEMORANDUM OF INTERVIEW

**DATE:**                              8/26/2002

**FROM:**                             Paul Enjalran

                                              Robert N. May

**TO:**                                  Clark File

**DATE OF THE INTERVIEW:**    8/9/2002

**PARTIES TO THE INTERVIEW:**
- Revenue Officer Paul Enjalran
- Revenue Officer Robert N. May
- Russell Jacobsen (summonsed party)
- Francis Mohan (attorney representing David C. Clark and Wendy Clark)

**INTERVIEW LOCATION:**      Walnut Creek Office

1. Russell Jacobsen (Jacobsen) was placed under oath prior to the start of the interview.

2. The following series of questions **(answer)** was posed to Jacobsen:[1]

   - Do you wish the attorney (Mohan) to be present at the interview? **(yes)**
   - Did you hire the attorney? **(no)**
   - Are you paying the attorney's fee? **(no)**
   - Do you know that the attorney (Mohan) also represents the subject of the investigation? **(yes)**

3. Francis Mohan (Mohan), the attorney present at the interview was asked if the Clarks were paying his fee. He responded in the affirmative.

4. Jacobsen stated that he is employed by Synergy Environmental Corp. and American Synergy Corp. as Comptroller. He receives his paychecks from those corporations. He also receives a stipend ($1200/yr) from each trust for which he is the trustee. He has been employed in this position for about two years. Prior to

---

[1] We addressed the question of the propriety of Mohan's presence prior to the interview. We had several concerns due to his representation of the Clarks, the subjects of our investigation. Counsel was consulted. The advice we received from Counsel was that Mohan must be allowed to attend. Although case law allows restriction our manual states that the taxpayer's attorney must be allowed to attend the interview.

1

that employment he was employed on a contractual basis to prepare tax returns for the corporations and trusts. That service was performed for about ten years. Jacobsen was trained as an accoutant and possesses a CPA license. However, his CPA license is inactive due to a lack of continuation education credits.[2]

5. Comptroller is the only position he has held. He reports to David Shallenberger (Shallenberger), the President. There is no Chief Financial Officer. Jacobsen also acknowledged that he communicates on a regular basis with David C. Clark.

6. When asked for the names of the trustees of the Clark C Trust (Clark C) Jacobsen stated that they include he and Shallenbeger and perhaps one other person. He was not able to name the creators. He stated that the children of David C. Clark and Wendy Clark are the beneficiaries.[3] Clark C bank accounts are located at Bank of the West and American Century. Jacobsen and Shallenberger have signature authority. Jacobsen opined that David C. Clark might also have signature authority.

7. Clark C. Trust owns the house in Kathleen St. in Freemont. The residents of the house are unrelated persons who live in the house rent free in return for caring for the property while the Clarks are out of the country. Jacobsen was asked about a Deed of Trust secured by the Kathleen property. He confirmed that the signed the Deed of Trust in favor of Eagle Systems International.[4] He possesses the corresponding note, valued at $600,000. Clark C. makes payments on the note. He also confirmed that there was no escrow (the Deed of Trust does not reflect an escrow number). He also confirmed that another Deed of Trust (recorded on 3/31/1998) in favor of American Synergy Financial Company had been paid off but was not aware if there was a Deed of Reconveyance. Jacobsen states that there was an appraisal obtained but does not recall the value of the property. Jacobsen made a point of stating that he was not the Executive Trustee of Clark C Trust but acknowledged that he signed the Deed of Trust as "Executive Trustee". He appeared surprised when confronted by the signed document. The importance of this dissonance is illuminated by the claim that Jacobsen and Shallenberger ostensibly negotiated the transaction. Only Shallenberger could "negotiate" on behalf of Eagle, negating his ability to sign on behalf of Clark C. Thus they were forced to have Jacobsen sign as "Executive Trustee" of Clark C Trust in spite of the fact that Shallenberger holds that position.

8. Jacobsen could not furnish much information about Clark D Trust (Clark D). He knows it has a bank account. He recalls this from doing their tax returns. He does not recall the name of the bank. He thinks that the trustee is David G Clark (father of David C. Clark) and the beneficiaries are the children of David G. Clark Sr. Children include Julie Richardson, Carol Brown, and David C. Clark. Initially he included "Roxanne" but changed his mind. Jacobsen thinks that the trust owns a house in Utah.

---

[2] This information was confirmed by on-line research with the California Board of Accountancy.

[3] Mohan did not challenge this statement at the time it was made. However, later, when the fact that monies have been paid by Clark C to Zion emerged, Mohan interjected that the beneficiary of Clark C is Zion. Jacobsen stated that was not how he understood the arrangement.

[4] Eagle Corporation is an entity owned by Shallenberger.

9.  Jacobsen stated that he, David C. Clark, and David G. Clark are trustees of Zion Foundation. His recollection is that Shallenberger is not a trustee but he could not be certain. David C. Clark is the primary donor and David G. Clark is the primary decision maker. Statements from the trust's bank account go to David G. Clark. However, the account is at the American Century Bank, as are the other trust accounts. Jacobsen stated that the people able to sign on the account are David C. Clark, David G. Clark, and himself. Two persons must sign the checks and he was given signature authority to help meet this requirement.

10. Jacobsen stated that there is no American Synergy Company Trust, only American Synergy Financial Trust. The trustees of the trust are Shallenberger and Jacobsen. The beneficiaries are Clark C Trust (90%) and Eagle (10%).

11. Eagle is Shallenberger's Corporation, and is located in Utah where Shallenberger resides. Eagle has bank accounts at Bank of the West and American Century. Signature authority is in the names of Shallenberger and Jacobsen. Eagle has no employees other than Shallenberger. When we initially asked Jacobsen if Eagle owns property, he stated that it does not.[5]

12. The basic businesses, American Synergy and Synergy Environmental, were initially owned by Shallenberger and sold to David C. Clark around 1981. The terms of that sale formed the basis for Shallenberger's 10% ownership, via Eagle. Shallenberger's compensation is based on the performance of the business. Essentially, he gets 10% of the profit, payable to Eagle.

13. David C. Clark owns 100% of the stock of American Synergy Corp and Synergy Environmental Corp. However, neither company pays a dividend and all earnings are retained. Prior to the establishment of a new business structure (this will be explained below) the only Clark C distributed income. Income to be distributed by Clark C was funneled to the trust via the corresponding business trusts that ostensibly controlled the construction companies. After the change of structure Eagle became the single vehicle used for the distribution of income.

---

[5] When we posed the question of who owns the Satellite property he stated that Eagle is the owner. This subject is discussed in another paragraph.

3

14. Jacobsen and Mohan described the old and new structure of the various entities as follows:[6]



[6] This description is taken from the diagram attached prepared by Mohan. The words were written by R. N. May as they were voice to him by Mohan. Jacobsen confirmed the arrangements shown.

4

15. According to Jacobsen, the old trust arrangement was replaced shortly after the completion of the audit. Mohan interjected that change occurred as a result of the audit, as the old trust arrangement was found to be a sham. This occurred on 1/1/2001. Eagle assumed the same roles as formerly provided by American Synergy Financial Trust, Synergy Environmental Trust, and Clark C Trust. This statement had significant implications and provoked several follow-up questions. American Synergy Financial Trust and Synergy Environmental Trust were revenue-producing entities. Also, Clark C and American Synergy Financial Trust own real property. We asked if there was consideration paid by Eagle for the trusts, Jacobsen stated that there was not. He explained this with the claim that the only value of the trusts is generated by results of the on-going marketing effort, now assumed by Eagle. Jacobsen states that the trusts have not been completely dissolved but are mostly dormant. Jacobsen also stated that two other entities existed along side the trusts. One was American Synergy Company and the other was Synergy Environmental Company. These are not the same entities as the construction companies, differentiated by the suffix "Company." vs. "Corp.". They were separate companies owned by the trusts and the entities that did the marketing. They are going away with the trusts as Eagle assumes their roles. Jacobsen was asked why significant transactions took place involving the trusts after Eagle ostensibly assumed their role. One example offered to Jacobsen for his response was the transfer of $750,000 from Zion to American Synergy Financial Trust on 7/20/2001. Jacobsen was not able to provide an explanation for the transfer. He was also asked about a transfer of $250,000 from the account of the American Synergy Co (using the TIN of American Synergy Financial Trust) to Associates Escrow in Midvale UT. This transaction occurred on 10/16/2001. Jacobsen described this transaction as a short-term loan to assist the Clark D Trust with the purchase of property in Utah.[7]

16. One of the primary rolls performed by the trusts, prior to the assumption of the role by Eagle, was marketing and consulting. The trusts (now Eagle) were the selling agents. American Synergy Corp. and Synergy Environmental Corp. (the entities that do the actual construction work) do not sell their services. That function, once furnished by their parent trusts (via other companies owed by the trusts), is now provided by Eagle. When the service sold by Eagle is purely consulting, requiring no construction work, Eagle bills the customer and receives the payment. When the contract sold by Eagle calls for physical construction work, the contract is "assigned" to Synergy Environmental Corp or American Synergy Corp, depending on the type of work, and the respective corporation does

---

[7] Jacobsen continued to explain away the transactions occurring after the 1/1/2001 transition date, as the result of a "phased" transition. There can be little doubt that the real reason for these discrepancies is that the new structure is simply a fiction needed to provide the façade of legitimacy. Unfortunately for the Clarks, the façade often does not conform to the realities of property and business ownership. Properties remain in the names of Clark C and American Synergy Financial Trust. Also, there is probably no eagerness to place property in the name of Eagle, Shallenberger's corporation.

the billing. However, as stated elsewhere, the two construction companies do not distribute any of the profits to the sole shareholder, David C. Clark. All earnings are "retained". As stated, Eagle has no employees other than Shallenberger. The selling is done by two persons who act as agents (not employees) of Eagle. They are Sal Vacaro and Jim Amos. They each have their individual corporations (Vicaro – Fortus, and Amos – Invictus) that received payments from Eagle. Eagle makes donations to Zion Foundation. Jacobsen explained this by saying Shallenberger shares interests with David C. Clark. We asked how Jacobsen matches up revenue with invoicing by the various entities. He stated that he does not see the invoices or the underlying contracts.

17. Jacobsen stated that he thought that Eagle owned the real property on Satellite. He was not aware that property records show titled vested in American Synergy Financial Trust. He stated that the property had been sold to Eagle. Nor was he aware that there was an encumbrance secured by the building in favor of Eagle in the form of a Deed of Trust he had signed. He was shown the Deed of Trust in favor of Eagle and appeared genuinely surprised. He also stated that on-going payments to Eagle for the property are classified as rent. He acknowledged his awareness of the distinction between a Deed of Trust and a Grant Deed. The other party to the transaction was Shallenberger. Jacobsen was asked if he knew of a Grant Deed that could explain the discrepancy and he answered in the negative.[8] He acknowledged that there had not been an escrow in any case.

18. Shallenberger's pay is based on the performance of the business. Jacobsen stated that Shallenberger sold the business to the Clarks and retained a 10% stake in the business. In return he receives a 10% cut in the profits. He receives periodic payments from the business that may or may not amount to 10% of the profit but there is reconciliation at some point to even it out to the proscribed 10%. On another occasion, Jacobsen stated that David C. Clark owns all of the stock in American Synergy Corp. and Synergy Environmental Corp. We did not reconcile this seeming discrepancy. However, Jacobsen stated that the two corporations retain all earnings. There are no dividends. Now that the business trusts are being eliminated only Eagle earnings are distributed. Since Eagle is 100% owned by Shallenberger (and only entitled to a 10% cut) it is very difficult to find a way to make all of these claims to mesh.

19. DCC Trust used to own vehicles but no longer exists.

20. Shallenberger used to be a missionary for LDS Church. He may have preceded David C. Clark as the head of the mission in Spain. As he is now the Executive Trustee of all of the Clark Trusts, and has effective control of the business, it

---

[8] The most likely explanation for this confusion on the part of Jacobsen is that he signed the Deed of Trust believing that he was signing a Grant Deed. This could easily have happened if he was not party to the transaction prior to his signing at the request of someone else. The converse is that his confusing a Grant Deed with a Deed of trust would not have happened if he had been part of an actual sale or loan transaction and preparation of the corresponding document.

appears that he and David C. Clark swapped positions. Jacobsen explained this reversal of roles a matter of long standing acquaintances with common interests.[9]

21. Clark C Trust makes (or made) donations to Zion Foundation. Jacobsen claims that Shallenberger, not Dave Clark, makes the decisions regarding the donations. Jacobsen stated that the Clark children have not been consulted on these distributions. When we asked if this was a violation of his fiduciary responsibility to the children he did not answer.

---

[9] It is clear from the facts that the corporate and trust forms are shams. However, the constructive form of the business entities is not entirely clear from the facts at hand. A sole proprietorship owned by the Clarks is one possibility. Another possible description is as a partnership between David C. Clark and Shallenberger.

# EXHIBIT 15

## MEMORANDUM OF INTERVIEW
### April 1, 2004

Interviewer:  Paul Enjalran, Revenue Officer, Employee ID No. 68-11664
                     SB/ SE Compliance, Area 13

Interviewee: Steven Shallenberger

In the mater of David C. and Wendy R. Clark

Date: 04-01-2004
Time: Interview began approximately 12:00PM
Method: Telephone

The Revenue Officer contacted Mr. Shallenberger at (801) 225-7235.  Mr. Shallenberger
was informed that the purpose of the contact was the result of a collection investigation
of David and Wendy Clark.  Mr. Shallenberger was told that the reason for contacting
him was the $600,000 Deed of Trust recorded between Eagle Systems International
(Eagle) and the Clark C. Family Trust (C. Trust).

Mr. Shallenberger stated that he was raised in Vallejo, CA.  Mr. Shallenberger states that
he comes to the Northern California area 10 tens days a year.

Following are highlights from the interview:

1.  Mr. Shallenberger does not know if he was a Trustee of the C. Trust at the time
    that the $600,000 Deed of Trust was executed.  He believes that he resigned to
    avoid a conflict of interest.  He will check.

2.  Russ Jacobsen was the other Trustee of the C. Trust.

3.  Mr. Shallenberger does not know who the beneficiaries were of the C. Trust when
    he was the Trustee. He will check.

4.  Mr. Shallenberger does know not exactly how the decision was made by the C.
    Trust to borrow the money from Eagle.  He believes minutes were taken.  He will
    check.

5.  Mr. Shallenberger does not know if an escrow file was opened.

6.   Mr. Shallenberger does not know what purpose the Clark C Trust had for
    $600,000. He will check.

7.   Mr. Shallenberger stated that Eagle paid the $600,000 to C. Trust at once.  He
    was unsure of the method.

1

8. Mr. Shallenberger was asked if a title report was secured. He stated some research was done, but he did not know if a title report was secured.

9. Mr. Shallenberger doesn't recall if the C. Trust provided Eagle with a financial statement.

10. The house at 41121 Kathlean Street was the only collateral for the $600,000 loan.

11. Mr. Shallenberger states that he does have a copy of the promissory note that was signed for the $600,000 loan.

12. Mr. Shallenberger states that the C. Trust does make payments on the loan but he did not know the amounts. He will check.

13. Mr. Shallenberger does not know if an appraisal was done for the property at Kathlean Street.

14. Mr. Shallenberger was not aware that a Notice of Federal Tax Lien was recorded against David and Wendy Clark.

15. Mr. Shallenberger does not know if the C. Trust is still operating.

16. Mr. Shallenberger was asked about two issues concerning the 2002 Form 1041 for the C. Trust:

    A. Who was the receipient of the $738,787 donation?? He will check.
    B. Who received the $137,570 distribution (this distribution was not reflected on schedule K-1 with return)? He will check.

17. Mr. Shallenberger was asked how the decision was reached by the C. Trust to make donations to the Zion Foundation. He does not know. He will check.

18. Eagle has not made donations to the Zion Foundation but it has made donations to another foundation. He stated that David Clark was not involved with that other foundation.

19. The officers of Eagle are Mr. Shallenberger and his spouse.

20. Eagle is involved in consulting, investing, and marketing. Eagle does not have brokerage license.

21. Eagle does have a relationship with the Synergy Environmental Inc. Eagle routes customers to Synergy Environmental[1].

---

[1] Russell Jacobsen was interviewed on 08-09-2002 with David & Wendy Clark's attorney present. Mr. Jacobsen stated that Mr. Shallenberger, through Eagle, had a 10% interest in both Synergy Environment Inc. and American Synergy Corporation. The Clarks' attorney Francis Mohan explained that Eagle

22. Mr. Shallenberger has never been involved with the Zion Foundation.

The Revenue Officer informed Mr. Shallenberger that a nominee Notice of Federal Tax
Lien was recorded against the C. Trust. Mr. Shallenberger wanted to respond to my
questions by e-mail. The Revenue Officer stated that due to security concerns that Mr.
Shallenberger should respond by fax at (707) 642-8938. The third party contact warning
was given; Mr. Shallenberger stated no concerns about retaliation. Revenue Officer
requested a copy of the promissory note.

---

replaced the functions of the C. Trust. Once Eagle succeeded Clark C Trust, on 1/1/2002; the two business
trusts sent their money to Eagle . According to Mohan, Eagle sent money to Zion.

# EXHIBIT 16

# INTERNAL REVENUE SERVICE MEMORANDUM
### November 10, 2003

**To: District Counsel, Area 7**

**From:  SB/ SE Compliance Area 13**
**Revenue Officers: Paul Enjalran 68-11664, (707) 642-8861; Robert N. May 68-11671, (925) 279-4059 Ext. 297**

**RE:    Nominee Lien Request**

**Taxpayers:**

> David Caine Clark, ▮▮▮▮▮, date of birth ▮▮▮▮▮
> Wendy Rae Clark, ▮▮▮▮▮, date of birth ▮▮▮▮▮
> Calle San Telmo 26, Madrid, Spain 28016

**Representation:**
> Francis X. Mohan III, Esq.
> 3031 West March Lane, Suite 211
> Stockton, CA 95219
> (209) 957-0660

### ***General Information***

**Tax Liability:**

| Form | Period | Assessment Date | Assessment | Accruals to 8-31-2003 | Total |
|------|--------|-----------------|------------|-----------------------|-------|
| 1040 | 12-31-1996 | 08-20-2001 | $409,246.10 | $89,164.75 | $498,410.85 |

**Nominee Entity**

- Clark C. Family Trust AKA Clark C. Trust (**CCFT**), Tax ID No. 52-6410825
  PO Box 964, Union city, CA 94587  Trustees: Russell Jacobsen, Steven Shallenberger

**Related Entities**

- American Synergy Company Trust, Tax ID No. 52-6410827
  PO Box 904, Union City, CA 94587  Trustees: Russell Jacobsen and Steven Shallenberger

- American Synergy Financial Co. Trust (**ASFT**), Tax ID No. 52-6433472
  PO Box 904, Union city, CA 94587  Trustees: Russell Jacobsen and Steven Shallenberger

- Synergy Environmental Company Trust (**SECT**), Tax ID No. 52-6410828
  PO Box 904, Union City, CA 94587  Trustees: Russell Jacobsen and Steven Shallenberger

- Zion Foundation AKA Zion Foundation Charitable Irrevocable Trust, Tax ID No. 52-6817979
  41121 Kathlean Street, Fremont, CA 94538 Trustees: David C. Clark, David G. Clark, Russell
  Jacobsen, and Steven Shallenberger

**Nominee Property to be Subject to Nominee Lien:**

With the approval of Counsel the following action will take place:

1

- Notice of Federal Tax Lien will be filed in Alameda County, specifying that the Clark C. Family Trust is the nominee of the taxpayers and attaches to their former personal residence at 41121 Kathlean in Fremont, CA.

**Key Players:**

David G. Clark, who resides in Draper, UT, is the father of David C. Clark. He has been identified as the trustee of the Zion Foundation.

Russell G. Jacobsen, who resides in Union City, CA, is a former CPA, who prepares the taxpayers' personal and trust returns. He has been identified as the trustee of the following: CCFT, ASFT, SECT and the Zion Foundation. The taxpayers' two corporations have employed Mr. Jacobsen since February 2000 (Exhibit A17). Prior to that employment he worked as an outside accountant. Mr. Jacobsen was summonsed by the Revenue Officers and placed under oath.

Steven R. Shallenberger, who resides in Provo, UT, has been identified as the trustee of the following: CCFT, ASFT, SECT, Zion Foundation. Mr. Shallenberger receives money from the ASFT and SECT through his business, Eagle Systems International, a Utah corporation. Eagle Systems International received $60,293 from ASFT, in 2000, according to bank records. Eagle Systems International received $109,375 from SECT, in 2000, according to bank records. Eagle Systems International encumbered the taxpayers' former personal residence and their commercial property, with large Deeds of Trust, in January 2002. Testimony from Russell Jacobsen indicates that Eagle Systems International may have replaced the functions of the CCFT, ASFT and SECT (Exhibit A9).

**General Information regarding Nominee Property:**

41121 KATHLEAN, FREEMONT, CA

This is a residential property, formerly the residence of David C. Clark and Wendy Clark, as well as their children. It is now the residence of another family, although its status as a "rental property" is not clear. On 10-10-2001, Revenue Officer Enjalran accessed Choicepoint; the asset locator database used by the IRS, and requested comparable sales for 41121 Kathlean. Choicepoint provided 10 comparable sales averaging $359,000 (Exhibit A13). [1] There are two Deeds of Trust recorded against this property:
1. Recorded on 06-16-1993, beneficiary, ASFT, in the amount of $227,645 (Exhibit D5).
2. Recorded on 01-11-2002, beneficiary, Eagle Systems International, in the amount of $600,000 (Exhibit D6).

Other than the two Deeds of Trust there are no other encumbrances against this property. We believe that both Deeds of Trust lack substance, as evidence will demonstrate in the body of this report. A civil suit to foreclose the Federal Tax Lien, under IRC 7403, will be proposed at a later date. ASFT uses the same trustees as the CCFT and it distributes most of its income to the CCFT. Mr. Jacobsen has claimed that the $227,645 note has been paid; however no Deed of Reconveyance has been recorded. The Eagle Systems encumbrance was recorded after the Notice of Federal Tax Lien was filed against the Clarks (Exhibit D1). Eagle Systems International is a business owned by Steven Shallenberger. Mr. Shallenberger has been identified as trustee of the CCFT. The $600,000 note does not make any economic sense, since the property is not worth $600,000.

Some key points in determining the Clark C. Family Trust (CCFT) is a nominee of the taxpayers in regards to this property:

1. The property was transferred to the trust for no consideration.
2. Trust documents indicate that the taxpayers retain a significant amount of control over the trust.

---

[1] The Kathleen property appears to be somewhat larger than surrounding properties.

3.  The purported beneficiaries of this trust, the taxpayers' children, receive very little benefit. The majority of the money this trust has is disbursed to the Zion Foundation.

**Collection Due Process:**

A Notice of Federal Tax Lien was filed in Alameda County on 10-01-2001 (Exhibit D1). The Clarks did not exercise their due process rights under IRC 6320. A Final Notice of Intent to Levy was sent certified mail separately to David C. and Wendy Clark, on 11-13-2002, at their last known address at 41121 Kathlean Street, Fremont, CA. A copy of the Final Notice and Intent to Levy was also sent to the taxpayers' Attorney Mr. Mohan. The Internet web site for the U.S. Postal Office indicates that an attempt was made to deliver the Final Notice of Intent to Levy on 11-20-2002. Notices were left by the Postal Service; however there has been no response from David or Wendy Clark. On 01-14-2003, I received a copy of an Offer in Compromise concerning the 1996 Income Tax liability. The Offer is based on doubt as to collectibility with $300,000 being the amount offered, to be paid within 90 days (Exhibit A19). The address on forms 433A and 656 is the address in Spain (Exhibit A20).

## \*\*\*Introduction\*\*\*

The Clarks use a series of trusts and a private foundation to conceal income and assets. Their filed returns substantially understated their income and taxes due. The assessment is the result of an abusive trust audit. The Exam Agent is Clarkson Smith, 415-522-6313. The Clarks originally formed these trusts when they were clients of NTS (National Trust Service). This organization is well known by Examination and Criminal Investigation in San Francisco as a major promoter of abusive trusts.

David C. Clark is self-employed and the owner of two corporations. Wendy Clark is a homemaker. Both are believed to be in good health. According to the Clarks attorney, Francis Mohan (Mohan) the Clarks are current serving as Missionaries in Spain, for the Church of Latter Day Saints. While they are out of the country Steven Shallenberger, who will be discussed later in this report, controls their business.[2] Prior to their missionary service the Clarks have lived in Fremont, Ca since the early 1980s.

David C. Clark has two wholly owned corporations:
1.  American Synergy Corporation, which is a weatherization and insulation contractor, valued at $193,000 on their 433A (Exhibit A20);
2.  Synergy Environmental Inc. FKA American Synergy Asbestos Removal Inc., valued at $75,000 on their 433A.

Although these corporations are profitable, they claim to retain all earnings. No dividends are paid. The corporations are controlled, through contractual arrangements, by two irrevocable trusts. ASFT contracts with American Synergy Corporation. SECT contracts with Synergy Environmental Inc. Both corporations use the address of 28436 Satellite Drive, Hayward, CA (ASFT owns this commercial address). The purported purpose for these trusts is that California State law specifies that contractors such as the two corporations must use independent companies to estimate the costs of the their jobs.

The ASFT and SECT distribute most of their profits to the CCFT, which owns the taxpayers' former personal residence in Fremont, California.

The CCFT distributes most of its income to the Zion Foundation (Zion). Zion was established by David C. Clark as a charitable trust. A stated purpose is to assist Mormon students living in Mexico (Exhibit H17). The Zion Foundation does make distributions to the Church of Latter Day Saints. However, the bulk of Zion income is "invested" and not distributed. The largest single recipient of Zion investments is Preferred Capital Investments Inc. a small corporation, which then makes loans to the nominees, per the direction of the foundation (Exhibit H11).

---

[2] The Clarks missionary status was confirmed on a website for the mission in Spain. An article dated 7/31/2000 stated that David C. Clark replaced Steven Shallenberger as President of the Spain Mission (Exhibit A4).

Thus, the dominant flow of Clark money is full circle from the Clark corporations to Clark controlled nominees, as shown in the following diagram:



As will be described later, our interview with Russell Jacobsen revealed that the scheme is purported to have changed on 1/1/2001 (Exhibit A9). Mohan confirmed this fact at the time of the interview. We will also show later that the new arrangement is more of a paper change than a reality. The new arrangement is as follows:



The flow of funds from Zion, under the new trust scheme, has not been demonstrated. Consequently, the diagrams shown above are only intended to depict the change in cash flow from the Clark Corporations to Zion, with Eagle replacing the business trusts and Clark C Trust.

The taxpayers filed their Income Tax returns for the years: 1996, 1997, 1998, and 1999 (Exhibits C1, C2, C3, C4). The adjusted gross income for these years respectively: $50,213; $54,500; $68,011; $111,200. The Clarks do not claim any itemized deductions on any of these returns. On the 1998 and 1999 returns they claim $4800 in "Fiduciary Fees". The majority of the income reported is wages from their two corporations.

Notices of Deficiency were issued to: David and Wendy Clark; CCFT; American Synergy Corporation; ASFT; SECT and American Synergy Asbestos Removal Inc. The taxpayers' attorney, Mr. Mohan, filed a petition in Tax Court on 08-28-2000. A settlement was reached with Appeals Officer William McDevitt. In this settlement, it was agreed that the trust income would be placed on the taxpayers' form 1040 and that the distributions to the Church of Latter Day Saints by the Zion Foundation would be allowed as itemized deductions on the form 1040 (Exhibits G3, G4). In negotiating this settlement the Appeals Officer did not obtain a signed agreement by Mr. Mohan acknowledging that these were grantor trusts. The settlement was entered in the Tax Court on 06-18-2001.[3]

Revenue Agent Clarkson Smith, (415) 522-6313, is conducting an audit of the taxpayers for the years 1997 and 1998. Revenue Agent Ron Clark, (415) 522-6364, has audited the Zion Foundation for prohibited transactions for the years 1997, 1998 and 1999, however due to statute considerations the year 1997 has been dropped. Revenue Agent Clark has proposed assessments against the Zion Foundation and its predecessor, the Zion One Foundation, under IRC sections 4940, 4944 and 4945 (Exhibit H16). Revenue Agent Clark has also proposed assessments against David C. Clark as a self-dealer under IRC 4941. On 02-10-2003, petitions in U.S. Tax Court were filed in the matter of David C. Clark and Zion Foundation (Exhibit A22). No settlement has been reached a trial date of 10-20-2003 has been scheduled.

---

[3] Shortly after the settlement with Appeals was reached Mr. Mohan contacted Revenue Officer May for the purpose of working out the collection arrangements. When Revenue Officer May enquired why the settlement placed all of the income and tax on the Clarks, Mohan stated that was because the IRS wanted the placement.

This report will demonstrate that the various trusts are, or were, nothing more than a façade for closely held business operating for the benefit of the Clarks and Shallenberger. The proportional benefit derived by the Clarks and Shallenberger is difficult to determine. As we write this report, we have not been able determine if the business is best characterized as a sole proprietorship owned by the Clarks or a partnership between the Clarks and Shallenberger. However, we believe that the trusts were nothing more than a sham designed to conceal taxable income. The remainder of this narrative will describe the various trusts in turn. For more background information see Exhibits H1 through H10.

Originally we were going to propose nominee levies on the bank accounts and mutual fund accounts of the following trusts: ASFT, CCFT and SECT. However our strategy changed after a meeting between, SB/ SE Compliance personnel and District Counsel. This meeting occurred on 10-24-2002 and was attended by the Revenue Officers and their Manager; Revenue Agent Smith and his Manager; and District Counsel Attorneys Tom Mackinson and Paul Zamolo. It was agreed that Revenue Agent Smith would assign the income tax deficiencies, for the years 1997 and 1998, to the taxpayer's two corporations; and that CCFT, ASFT and SECT will be regarded as nominees of these corporations. This strategy will also have a better effect for future compliance since the taxpayers' main source of income is from these corporations. The decision to assign the trust income to the Clarks individually, for 1996, was made by the taxpayer's Attorney. No decision was reached about how to pursue the assets of the Zion Foundation. Because the David and Wendy Clark originally purchased 41121 Kathlean before transferring it to the CCFT, a nominee lien against this asset will be requested. This narrative may appear quite large for a request against one entity, but we believe it is necessary to provide this detail because of the close relationship of these trusts, for example no action is being proposed against SECT however this trust does transfer a significant amount of income to the CCFT.

The filing of the Offer in Compromise (OIC) does prohibit the issuance of a Notice of Levy, but it does not prevent the filing of a Notice of Federal Tax Lien. The OIC does appear to be acceptable after a prima facie examination, however our investigation of the taxpayers' abusive trust scheme leads us to believe that the taxpayers can full pay their current liability. It also may not be in the government's best interest to accept the OIC because the audit for the taxpayers' subsequent income tax periods have not been resolved and the excise tax recommended against David C. Clark has not been resolved in tax court. We may attempt to have the OIC rejected on the basis that it is an attempt to impede collection.

### *** Zion Foundation ***

Although we are not proposing a nominee lien or levy in the name of Zion Foundation, details need to be provided concerning the Zion Foundation as groundwork for the discussion of the nominees. This is because this IRC 501(c) (3) private foundation is the recipient of the funds from the CCFT and the Clark D. Family Trust or the Clark D. Trust. David C. Clark has been involved with the Clark D. Trust through property transactions in Utah and through financial transactions the bank accounts of this trust. We conducted a thorough examination of evidence obtained from third parties and concluded that we cannot demonstrate that this trust is a nominee of David C. Clark. David G. Clark is the primary beneficiary of the Clark D. Trust.

There are 2 Tax ID Nos. for this foundation:
1.  52-1667830 (old TIN) American Synergy Foundation Non Profit, Zion One Foundation, established on 03-1990;
2.  52-6817979 (new TIN) Zion Foundation Charitable Irrevocable Trust, established on 10-1996.

The old TIN is no longer being used. A letter from an Attorney named Gardner Russell to IRS Appeals Officer McDevitt explains the reason for the two TINs (Exhibit G5). In 1991 a form 1023, Application for Exempt Status, and a $300 fee was sent to the IRS. The IRS did process the fee, but it never responded to the form 1023. According to Mr. Russell the original paperwork for the 1991 application was lost, therefore they submitted a new form 1023 in November 1996, for the new TIN. The IRS approved Zion's exempt status on 05-23-1997.

# EXHIBIT 17

RECORDING REQUESTED BY

TRANSAMERICA TITLE COMPANY

AND WHEN RECORDED MAIL TO

Name
Street
Address
City
State
Zip

DAVID C. CLARK
WENDY R. CLARK
41121 Kathlean Street
Fremont, California

MAIL TAX STATEMENTS TO

Name
Street
Address
City
State
Zip

SAME AS ABOVE

RECORDED at REQUEST OF
Transamerica Title Co.
At 10:30 A.M.
SEP 8 9 1983

ALAMEDA COUNTY, CALIFORNIA
RENE C. DAVIDSON
COUNTY RECORDER

83-183136
001

TRANSFER
TAX PAID
ALAMEDA COUNTY

— SPACE ABOVE THIS LINE FOR RECORDER'S USE —

DOCUMENTARY TRANSFER TAX $ ____114.40____
XXX COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
____ OR COMPUTED ON FULL VALUE LESS LIENS AND
ENCUMBRANCES REMAINING AT TIME OF SALE.
TRANSAMERICA TITLE COMPANY
Signature of Declarant or Agent determining tax. Firm Name

# GRANT DEED

(Escrow No. 832928 )

By this instrument dated ............SEPTEMBER 27, 1983............ for a valuable consideration,

JUDITH C. BROWN

hereby GRANTS to     DAVID C. CLARK AND WENDY R. CLARK, HUSBAND AND WIFE, AS JOINT
TENANTS

the following described Real Property in the State of California, County of ............ALAMEDA............

City of ............FREMONT............

83-183136

LOT 43, IN BLOCK 3, AS SAID LOT AND BLOCK ARE SHOWN ON THE MAP OF "TRACT
1975, FREMONT FIELDS UNIT NO. 5, CITY OF FREMONT, ALAMEDA COUNTY,
CALIFORNIA", FILED FEBRUARY 4, 1959, IN BOOK 39 OF MAPS, AT PAGES 46 AND
47 IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY.

ASSESSOR'S PARCEL NUMBER : 525-1118-11

*Judith C. Brown*
JUDITH C. BROWN

STATE OF CALIFORNIA }
                    } SS.
COUNTY OF ALAMEDA }

On SEPT. 27, 1983, before me, the undersigned, a Notary Public in and for said
County and State, personally appeared JUDITH C. BROWN
............................................ known to me to be the
person whose name is subscribed to the within instrument, and acknowledged to me that She executed the same.

Notary's Signature *Rosalind S. King*

OFFICIAL SEAL
ROSALIND S. KING
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires Jan. 14, 1987

Form No. 140
Revised 9-67

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# EXHIBIT 18



THE CLARK C. TRUST
41121 Kathlean Street
Fremont, California 94538

## SCHEDULE A

**PURSUANT TO**

the creation and organization of the CLARK C. TRUST and the TRUST INSTRUMENT, the GRANTOR CREATOR of the TRUST, DAVID C. CLARK, and/or WENDY R. CLARK hereto conveys or will promptly convey the following assets to the TRUST:

1. **Property** including all improvements located at 41121 Kathlean Street, Fremont, Alameda County, California 94538 with a ~~current~~ appraisal value of $225,000, less the existing mortgage loan.

2. **Treasury Bill** $50,000 through Wells Fargo Bank.

3. **Certificate of Deposit** in the amount of $54,000 at Wells Fargo Bank.

4. **Furniture and Fixtures** located at the above Kathlean Street property, value estimated at $5,000.

**THE GRANTOR CREATOR**

represents and certifies that the above-listed assets are the major assets previously owned by DAVID C. CLARK and WENDY R. CLARK, and are being transferred to the CLARK C. TRUST in the most expeditious manner possible. It is recognized that there is an existing first mortgage in the amount of $101,000 encumbering the Kathlean Street property, full responsibility for said encumbrance and its future liquidation to be by and on behalf of the CLARK C. TRUST and a note payable to American ?Synergy Corporation of California for improvements to the property, in the amount of $109,875, for a total encumbrance of $210,875.

**NOW, THEREFORE**

the CLARK C. TRUST does hereby acknowledge receipt of these assets subject only to their existing liabilities to be the CORPUS of this TRUST, effective January 6, 1989.

Clark C. Trust

By_____          By_____
Steven R. Shallenberger, Executive Trustee          Russell Jacobsen, Trustee